# Exhibit A

SETTLEMENT AGREEMENT

This Settlement Agreement, dated March 15, 2013 (the "Execution Date"), is entered into by and between (i) Bayer HealthCare Pharmaceuticals Inc. ("BHCP"), and (ii) the plaintiffs' counsel listed in the signature pages hereto under the heading "Negotiating Plaintiffs' Counsel" ("NPC").

All capitalized terms used herein shall have the meanings ascribed to them, respectively, either where they are first used (set off in parentheses and quotations and underscored) or where they appear in Article XIII below.

RECITALS

A.     This Settlement Agreement pertains to (1) *In Re: Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation, MDL No. 2100* (the "MDL"), a federal multi-district litigation venued in the United States District Court for the Southern District of Illinois (the "MDL Court"); (2) any other federal court proceedings pertaining to actions, disputes, and claims asserted against Defendants regarding the use of drospirenone-containing oral contraceptives manufactured by Bayer or manufactured or marketed by BarrTeva (collectively, "DCOCs"), either pending in that court or removed therefrom and awaiting transfer to the MDL (collectively, the "Other Federal Court Proceedings"), and (3) *In re Yaz, Yasmin and Ocella Contraceptive Cases, Case No. JCCP 4608* (Superior Court of the State of California, County of Los Angeles) (the "California Coordinated Proceedings"), In RE: Yaz/Yasmin/Ocella Litigation, BER-L-3572-10 (Superior Court, Law Division, Bergen County) (the "New Jersey Coordinated Proceedings"), and *In re: Yaz/Yasmin/Ocella/Gianvi Products Liability Litigation*, September Term, 2009. No 1307 (Court of Common Pleas of Philadelphia County, Trial Division-Civil) (the "Philadelphia Court of Common Pleas Coordinated Proceeding") pending in their respective courts (collectively, the "State Coordinating Courts").  The Gallbladder Resolution Program established pursuant to this Settlement Agreement also is open to Claimants in any and all other state court proceedings pertaining to actions, disputes, and claims asserted against Defendants regarding the use of DCOCs (together with the cases pending in the State Coordinating Courts, the "State Court Proceedings").

B.     NPC, having been duly authorized by the MDL Court or the applicable State Coordinating Court, and BHCP have agreed to establish a private settlement program to resolve certain Claims (the "Gallbladder Resolution Program" or the "Program").  The terms "Claim" or "Claims", as the context may require, means any actions, disputes, and claims asserted against Defendants that constitute: (i) part of the MDL; (ii) part of any Other Federal Court Proceeding; or (iii) part of any State Court Proceeding, in each case alleging (in a complaint, in a Plaintiff Fact Sheet, or in both) a Gallbladder Injury (either alone or in combination with some other injury) resulting from the use of DCOCs.  The Program is limited to Claims in the MDL (the "MDL Cases"), in the Other Federal Court Proceedings, and in the State Court Proceedings, as were filed prior to the Execution Date and to any such Claims that may be filed on or after the Execution Date, but prior to the Filing Deadline, as to which a Declaration of Counsel timely has been submitted.  MDL Claimants, other than those alleging a VTE or ATE Injury in addition to a Gallbladder Injury, are automatically enrolled in the Program and will remain so unless they opt

out of the Program pursuant to the terms set forth in this Agreement.  MDL Claimants alleging a VTE or ATE Injury in addition to a Gallbladder Injury, Federal Claimants, and State Claimants may opt into the Program pursuant to the terms set forth in this Agreement.

C.      BHCP denies any liability or wrongdoing and asserts that it, and the other Defendants, have meritorious affirmative defenses to these lawsuits.  This Agreement, accordingly, will not be construed as evidence of, or as an admission by Defendants of, any fault, liability, wrongdoing, or damages whatsoever.

D.      This Agreement is limited to the particular facts of the specific injuries and issues involved in the Yaz/Yasmin/Ocella litigation, MDL No. 2100, and the state coordinated actions. The Parties agree and understand that this Agreement shall not be used, cited, or relied upon in any manner in any future cases or settlements without the express approval of the NPC and BHCP.

E.      All sums awarded under this Agreement, however, constitute damages on account of personal physical injuries or sickness, within the meaning of §104(a)(2) of the Internal Revenue Code.  There is, however, no guarantee that every person who has made a claim or filed a lawsuit will be compensated under the terms of this Agreement.

BHCP and NPC hereby agree as follows:

### Article I.      Program Enrollment

**Section 1.01**   MDL Enrollment Procedures

(A)     All Eligible MDL Claimants, as defined in Article XIII, other than those alleging a VTE or ATE Injury in addition to a Gallbladder Injury, are automatically enrolled in the Program and constitute MDL Participants unless they submit the "Notice of Intent to Opt Out Form", contained in Appendix B-1, on or before the Opt Out Deadline, as defined in Section 1.04.

(B)     An Eligible MDL Claimant who has alleged a VTE or ATE Injury, in addition to a Gallbladder Injury, is not automatically enrolled in the Program but shall be entitled to enroll in the Program and become an MDL Participant by submitting a "Notice of Intent to Opt In Form," contained in Appendix B-2, on or before the Opt In Deadline, as defined in Section 1.04, applicable to the Claimant.  Submission of the "Notice of Intent to Opt In Form" shall be irrevocable after the Opt In Deadline applicable to the Claimant.  By enrolling in the Program, any Claimant will be releasing all claims against all Defendants (including any and all Bayer Defendants), including their claims alleging a VTE or ATE Injury.

(C)     Eligible MDL Claimants who are automatically enrolled in the Program and who do not timely opt out and Eligible MDL Claimants who, pursuant to Section 1.01(B), submit a Notice of Intent to Opt In Form shall be bound by the terms of this Agreement and must submit a Claim Package

on or before the Claim Package Deadline to be eligible for an award under the Program.

**Section 1.02**   Federal Case Enrollment Procedures

    **(A)**    Eligible Claimants who have Federal Cases pending in federal court other than the MDL Court, or whose cases have been removed therefrom and are awaiting transfer to the MDL, are not automatically enrolled in the Program but are eligible to participate in the Program. Such Eligible Claimants who wish to enroll in the Program and be bound by the terms of this Agreement must submit the "Notice of Intent to Opt In Form", contained in Appendix B-2, on or before the Opt In Deadline applicable to the Claimant in the manner set forth in Section 1.04(B) below. Submission of the "Notice of Intent to Opt In Form" shall be irrevocable after the Opt In Deadline applicable to the Claimant, shall bind the Claimant submitting the form to the terms and conditions of this Agreement, and shall constitute affirmative acceptance of the jurisdiction of the Special Master and the MDL Court (or the state court where the case was filed or would have jurisdiction should the federal court where the case was filed and the MDL Court lack subject matter jurisdiction) for all matters and decisions relative to this Agreement.

    **(B)**    Failure to timely submit a "Notice of Intent to Opt In Form" in the manner required will bar such an Eligible Claimant from potential recovery of an award under the Program.

**Section 1.03**   State Case Enrollment Procedures

    **(A)**    Eligible Claimants who have State Cases pending in state court are not automatically enrolled in the Program but are eligible to participate in the Program. Such Eligible Claimants who wish to enroll in the Program and be bound by the terms of this Agreement must submit the "Notice of Intent to Opt In Form" on or before the Opt In Deadline applicable to the Claimant in the manner set forth in Section 1.04(B) below. Submission of the "Notice of Intent to Opt In Form" shall be irrevocable after the Opt In Deadline applicable to the Claimant, shall bind the Claimant submitting the form to the terms and conditions of this Agreement, and shall constitute affirmative acceptance of the jurisdiction of the Special Master and the MDL Court (or the state court where the case is pending or where jurisdiction would have been proper should the MDL Court lack subject matter jurisdiction) for all matters and decisions relative to this Agreement.

    **(B)**    Failure to timely submit a "Notice of Intent to Opt In Form" in the manner required will bar such an Eligible Claimant from potential recovery of an award under the Program.

**Section 1.04**   Opt In and Opt Out Deadlines

**(A)**   NPC and BHCP, jointly, shall petition the MDL Court and each of the state court judges presiding over coordinated proceedings for a case management order to implement certain deadlines and other provisions of this Agreement and to provide notice of this Agreement, in the form attached hereto as Appendix A ("Implementing CMO"), as modified in the state courts to conform to state practice.

(1)   The Implementing CMO shall set forth 11:59 p.m. C.T. on the later of (x) April 29, 2013, or (y) May 29, 2013, if, on or before April 29, 2013, the Eligible Claimant has provided to the Claims Administrator a reasonable justification for requiring more than a 45-day period to opt out (as determined by the Claims Administrator in good faith), as the time and date by which MDL Claimants who elect to opt out of the Program must submit the "Notice of Intent to Opt Out Form" contained in Appendix B-1 (as applicable, the "Opt Out Deadline").

(2)   The CMO shall also set forth 11:59 p.m. C.T. on the later of (x) April 29, 2013, (y) May 29, 2013, if, on or before April 29, 2013, the Eligible Claimant has provided to the Claims Administrator a reasonable justification for requiring more than a 45-day period to opt in (as determined by the Claims Administrator in good faith), or (z) June 18, 2013, if the Claims Administrator shall determine that, for any reason in its discretion, any Eligible Claimants need an additional twenty (20) days to opt in, as the time and date by which Eligible MDL Claimants alleging a VTE or ATE Injury in addition to a Gallbladder Injury, Federal Claimants, and State Claimants, who elect to participate in the Program, must submit the "Notice of Intent to Opt In Form" contained in Appendix B-2 (as applicable, the "Opt In Deadline").

**(B)**   The "Notice of Intent to Opt Out Form" and the "Notice of Intent to Opt In Form", as the context requires, must timely be submitted in one of the following ways:

(1)   Preferred option for submission:  Online in accordance with instructions provided by the Claims Administrator.  *See* www.yazofficialsettlement.com.

or

(2)   By email to all of the following:

(a)   optinoptoutnotice@yazofficialsettlement.com (Claims Administrator);

        (b)    OptInOptOutNotice@shb.com (BHCP's counsel); and

        (c)    YazGBClaimNotice@uselaws.com (NPC);

    or

(3)    By United States Mail or other carrier, post-marked on or before the relevant Opt In Deadline or Opt Out Deadline, return receipt requested, to all of the following:

    (a)    Claims Administrator

        Yaz Settlement Claims Administrator
        BrownGreer PLC
        P.O. Box 85006
        Richmond, VA  23285-5006

        and

    (b)    BHCP's counsel

        Jeff Fields
        Shook, Hardy & Bacon L.L.P.
        2555 Grand Blvd.
        Kansas City, MO 64108-2613

        and

    (c)    NPC

        Roger Denton
        Schlichter, Bogard & Denton, LLP
        100 South Fourth Street, Ste 900
        St. Louis, MO 63102

**Section 1.05**  Eligible Claimants

(A)    Only Eligible Claimants may participate in the Program.  "Eligible Claimant" means all claimants (or their personal representatives) who:  (a) have cases filed, as of the Execution Date, in (i) the MDL Court, (ii) any Other Federal Court Proceeding; or (iii) any State Court Proceeding, in each case alleging (in a complaint, in a Plaintiff Fact Sheet, or in both) a Gallbladder Injury (either alone or in combination with some other injury) resulting from the use of a DCOC; or (b) file and serve a case on or before March 25, 2013 (i.e., the Filing Deadline) in the MDL Court, any other federal court, or any state court, in each case alleging (in a complaint, in a Plaintiff Fact Sheet, or in both) a Gallbladder Injury resulting from the use

of a DCOC, together with a Declaration of Counsel, contained in Appendix G.

(B)     Service on BHCP of the complaint and Declaration of Counsel must be made by U.S. mail or other carrier, postmarked prior to 11:59 p.m. C.T. on March 25, 2013, return receipt requested, to:

>    Douglas Beck
>    Shook, Hardy & Bacon L.L.P.
>    2555 Grand Blvd.
>    Kansas City, MO 64108-2613
>
>    or

by email (prior to 11:59 p.m. C.T. on March 25, 2013) to:

>    ServeBayer@shb.com

For purposes of participation in this Agreement no other service is necessary, and Plaintiffs need not name, and may not serve, any entity other than BHCP in accordance with the procedures specified in this Section 1.05(B).

(C)     On the same date that the MDL Court posts on the CM/ECF system the Implementing CMO together with the Agreement (i.e., the Execution Date), State-Federal liaison counsel previously appointed by the MDL Court for the California Coordinated Proceedings, the New Jersey Coordinated Proceedings, and the Philadelphia Court of Common Pleas Coordinated Proceedings, or their designee(s), shall provide electronic notice to all plaintiffs in their respective jurisdictions who have filed cases alleging injury from the use of DCOCs, by transmitting this Agreement and any implementing orders. BHCP agrees to cooperate with each State-Federal liaison counsel, their designee, or the relevant NPC member(s) to provide a list of all plaintiffs' counsel in the respective jurisdictions. Any delay in providing such notice shall not extend the Filing Deadline.

### Article II.      Funding Obligations

**Section 2.01**  Settlement Funds

(A)     BHCP shall deposit into the Qualified Settlement Fund only those funds necessary for the payment of settlement awards in accordance with the terms hereof. Payments shall be made on an as needed basis within thirty (30) days of receiving a report from the Claims Administrator articulating the amount necessary to pay those Program Participants who have submitted Eligible Claims that have been approved for payment by the Claims Administrator, subject to Section 2.01(C) (such aggregate amount as is finally deposited into the Qualified Settlement Fund being referred to

6

herein as the "Settlement Funds").  The Claims Administrator shall make periodic reports for the purpose of directing BHCP's obligation to make deposits into the Qualified Settlement Fund every 30 days.

**(B)**     NPC agree that the amount of the settlement awards and the Settlement Funds are fair and reasonable under the circumstances.  The Settlement Funds shall be paid by BHCP.

**(C)**     The total of all settlement awards payable under this Agreement shall be subject to a cap of Twenty Four Million Dollars ($24,000,000.00) (the "Cap") and in no event shall the aggregate of all Settlement Funds exceed the Cap.  In the event the total of all awards under this Agreement would exceed the Cap, the Claims Administrator will reduce the awards under this Agreement as follows:

(1)     First, the total amount of awards to be paid, absent the Cap, shall be determined under this Agreement.  This amount is the "Pre-Cap Total."

(2)     Second, if the Pre-Cap Total exceeds the Cap all awards shall be reduced proportionately by a discount factor as follows:

(a) The Cap will be divided by the Pre-Cap Total, resulting in the discount factor;

(b) Tier 1 Awards will be determined by multiplying $3,000 by the discount factor; and

(c) Tier 2 Awards will be determined by multiplying $2,000 by the discount factor.

**(D)**     Any term of this Agreement, or of the Qualified Settlement Fund Agreement, to the contrary notwithstanding, in no event shall BHCP, or any other Defendant, have any obligation to make payments into the Qualified Settlement Fund unless and until (i) the Qualified Settlement Fund shall have been duly approved by the MDL Court, (ii) the Effective Date shall have occurred, and (iii) the other requirements set forth in this Agreement have been satisfied.  Further, Defendants shall have no financial obligations under this Agreement other than BHCP's express obligations to make payments into the Qualified Settlement Fund, to pay Administrative Expenses as set forth herein, and to pay any expenses relating to motions, appeals, or audit(s) as dictated by this Agreement. Defendants shall have no obligation to pay (or to make any payment on account of), or reimburse, any Persons for any attorneys' fees or costs or expenses incurred by any such Persons in connection with the Program. Defendants also shall have no responsibility for the management of the Qualified Settlement Fund or any Liability to any Persons arising from the handling of Claim Packages by the Claims Administrator.

**Section 2.02**   Qualified Settlement Fund

**(A)**   In accordance with the terms of this Agreement, the Settlement Funds shall be deposited into the Qualified Settlement Fund and shall remain the property of the Qualified Settlement Fund.  The Settlement Funds within the Qualified Settlement Fund will be held in a fiduciary capacity.  The Qualified Settlement Fund shall comply with the Treasury Regulations Section 1.468B-1 *et seq.* regarding taxation and tax reporting obligations.  The Qualified Settlement Fund shall be deemed to be in the custody of the MDL Court.  The Qualified Settlement Fund shall remain subject to the jurisdiction of the MDL Court until such Settlement Funds are distributed in their entirety or upon further order of the MDL Court.

**(B)**   BHCP and NPC wish to have the Qualified Settlement Fund maintained in as secure a manner as possible so that the Settlement Funds will be available to be paid to those who qualify for an award under the Program.  UMB Bank is the financial institution that will hold the Settlement Funds.  BHCP and NPC will consult as to the form of prudent investment vehicles to be used for investment of the funds.  Once a tentative decision as to the form of investment has been made, BHCP and NPC shall jointly move the MDL Court for approval of the Qualified Settlement Fund.  Any disagreement between BHCP and NPC as to the designation of the institution or the form of investment shall be resolved by the MDL Court.

**(C)**   The NPC is solely responsible for securing the QSF Administrator's execution and delivery of the Qualified Settlement Fund Agreement and such Person's consent to the jurisdiction of the MDL Court, acknowledging that the chosen financial institution and the QSF Administrator alone have the obligation to manage the Settlement Funds.  Periodic reports shall be made to the MDL Court of the interest earned, distributions made, and other matters involving the status of administration.  Its management shall thereafter be subject to review by the MDL Court.

**(D)**   BHCP shall in no way be responsible for the expenses of the QSF Administrator or the administration of the Qualified Settlement Fund.  Said expenses, if any, may be paid out of the funds deposited and held in the Qualified Settlement Fund.  BHCP shall in no way be associated with the administration of the Qualified Settlement Fund or be liable in respect of any dispute between or among any Program Participants and their respective counsel in respect of any costs, expenses, legal fees, or litigation costs to be deducted from the Qualified Settlement Fund.

**Section 2.03**   Tax Treatment of the Qualified Settlement Fund

**(A)**   Treatment.  To the fullest extent allowable under applicable law, the Qualified Settlement Fund shall be treated as being at all times a

"qualified settlement fund" within the meaning of Treasury Regulation §1.468B-1. The QSF Administrator and, as required, NPC and BHCP, shall timely make such elections as are necessary or advisable to carry out the provisions of this Section, including the "relation-back election" as defined in Treasury Regulation §1.468B-1, back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulation. It shall be the sole responsibility of the QSF Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

**(B)**    Tax Returns. For the purpose of Section 468B of the Internal Revenue Code, the "administrator" shall be the QSF Administrator. The QSF Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Qualified Settlement Fund and the amounts held in the Qualified Settlement Fund including the returns described in Treasury Regulation §1.468B-2(k)(l). Such returns (as well as the election described in Section 468B) shall be consistent with Section 468B and in all events shall reflect that all taxes (including any estimated taxes, interest or penalties, or tax detriments) on the income earned by the Qualified Settlement Fund shall be paid exclusively out of the Qualified Settlement Fund, in accordance with Section 468B.

**(C)**    Taxes and Tax Expenses. All (i) federal, state, or local taxes (including any estimated taxes, interest or penalties, or tax detriments) arising with respect to the income earned on or by the Qualified Settlement Fund, including any taxes, interest penalties, or tax detriments, that may be imposed upon Defendants with respect to any income earned on or by the Qualified Settlement Fund for any period during which the Qualified Settlement Fund (or any portion thereof) does not qualify as a "qualified settlement fund" for federal or state income tax purposes (hereafter referred to as "Taxes"), and (ii) expenses and costs incurred in connection with the administration of tax matters for the Qualified Settlement Fund and the operation and implementation of this Section (including expenses of tax attorneys or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Section) (hereinafter referred to as "Tax Expenses"), shall be paid exclusively out of the Qualified Settlement Fund. The QSF Administrator shall notify NPC and BHCP in writing of the fact and amount of any such payment of Taxes or Tax Expenses out of the Qualified Settlement Fund (and any withholding pursuant to this Section).

**(D)**    Cooperation. NPC and BHCP hereto agree to cooperate with the QSF Administrator, Claims Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section.

**Section 2.04**   Claims Administration Expenses

**(A)**   BHCP shall be responsible for paying the fees and expenses incurred by the Claims Administrator in administering the Program (the "Administrative Expenses"), except as otherwise expressly set forth in Section 5.05 below.  For avoidance of doubt, BHCP shall not be responsible for paying the fees and expenses incurred by the QSF Administrator.

**(B)**   Within three (3) Business Days after the end of each full calendar month following the Execution Date, the Claims Administrator shall submit to BHCP, in such form and in such detail as BHCP reasonably from time to time may specify, a report (each an "Expenses Report"), itemizing and certifying a list of all Administrative Expenses incurred during such calendar month.  A copy of such Expenses Report shall be made available to the NPC for review.

**(C)**   BHCP and each other Person incurring fees and costs shall pay the Administrative Expenses described in each Expenses Report within thirty (30) days of receipt thereof or as otherwise agreed as between that Person and the Claims Administrator.

**Section 2.05**   Tiers

**(A)**   Claim Tiers

(1)   "Tier 1 Claim" means a completed Claim Package submitted with Supporting Documentation indicating a Cholecystectomy according to Event Records.

(2)   "Tier 2 Claim" means a completed Claim Package submitted with Supporting Documentation indicating a diagnosis of a Gallbladder Injury according to Medical Records, but no Cholecystectomy was performed.

**(B)**   Award Tiers

(1)   "Tier 1 Award" means a settlement award of up to $3,000.00 (subject to reduction by virtue of the Cap) to be paid in respect of a Tier 1 Claim in accordance with the terms of the Agreement.

(2)   "Tier 2 Award" means a settlement award of up to $2,000.00 (subject to reduction by virtue of the Cap) to be paid in respect of a Tier 2 Claim in accordance with the terms of the Agreement.

**Article III.**    Claim Package, Review and Payment

**Section 3.01**   Claim Package Deadline

Program Participants must submit a complete Claim Package, together with all Supporting Documentation, on or before 11:59 p.m. C.T. on the ninetieth (90th) day following the Effective Date (the "Claim Package Deadline") or, as applicable and subject to the terms of Section 3.05 below, the Cure Deadline. Failure to submit a complete Claim Package on or before the Claim Package Deadline or Cure Deadline, as applicable, shall subject the Program Participant's case to dismissal with prejudice upon motion by BHCP, or, if BHCP is not a Defendant in the case, any Defendant in such case, pursuant to Section 6.01 below. BHCP or the Claims Administrator will provide to the NPC the total number of Claim Packages following the Cure Deadline.

**Section 3.02**   Claim Package Submission

**(A)**    Persons who did not ingest DCOCs may not submit a separate Claim Package under the Program.  All Derivative Claims must be included as a part of the Claim Package submitted by or on behalf of the DCOC user.

**(B)**    Claim Packages must be submitted to the Claims Administrator on or before the Claim Package Deadline in one of the following ways:

(1)    Online in accordance with instructions provided by the Claims Administrator. *See* www.yazofficialsettlement.com; or

(2)    By email to claimpackage@yazofficialsettlement.com  (Claims Administrator); or

(3)    By United States Mail or other carrier, post-marked on or before the Claim Package Deadline, return receipt requested, to the following:

Yaz Settlement Claims Administrator
BrownGreer PLC
P.O. Box 85006
Richmond, VA 23285-5006

**(C)**    The Claims Administrator shall provide regular updates to BHCP and the NPC as to the submission, review and approval process.  BHCP or NPC may request copies of the Claim Package or any other documentation submitted with the Claim Package from the Claims Administrator.

**Section 3.03**   Supporting Documentation

**(A)**    A complete Claim Package must include:

11

(1) A completed and signed Claim Form contained in Appendix D;

(2) An executed Release contained in Appendix E-1;

(3) In the event of a plaintiff who asserts a Derivative Claim in the complaint filed by the Program Participant, an executed Release contained in Appendix E-2, instead of an executed Release contained in Appendix E-1, executed by the Program Participant and by any plaintiff who asserts a Derivative Claim in the complaint filed by the Program Participant.  For avoidance of doubt, a release is not required from the spouse of a plaintiff if the spouse did not assert a Derivative Claim in the complaint.

(4) Contemporaneous prescription records from a pharmacy or medical facility reflecting that the Program Participant was prescribed or provided with a DCOC, it being understood that "contemporaneous prescription records" refers to records that were created at, or about, the time the prescription was written or the DCOC provided (the "Prescription Records");

(5) Contemporaneous medical records reflecting a diagnosis of Gallbladder Injury after the Program Participant was first prescribed a DCOC, as reflected in the Prescription Records, it being understood that "contemporaneous medical records" refers to records that were created at, or about, the time the diagnosis was made (the "Medical Records");

(6) If the Program Participant is alleging that she had surgery to remove her gallbladder (a "Cholecystectomy"), complete and contemporaneous records from a medical facility at which the surgery was performed, showing that the surgery was performed, it being understood that "contemporaneous records" when used to refer to Event records means records that were prepared at, or about, the time of the surgery (the "Event Records");

(7) The Program Participant's assertion of a Tier 1 Claim or a Tier 2 Claim.

(8) A Stipulation of Dismissal:

 (a) MDL Participants must submit an executed stipulation of dismissal in the form contained in Appendix F-1 (the "MDL Stipulation of Dismissal").

 (b) Federal Participants must submit an executed stipulation of dismissal for federal court that abides by all applicable federal and local rules for effectuating the dismissal, with

prejudice, of the Federal Case against all Defendants (each a "<u>Federal Stipulation of Dismissal</u>").

(c)    State Participants must submit an executed stipulation of dismissal for state court that abides by all applicable state and local rules for effectuating the dismissal, with prejudice, of the State Case against all defendants in the form contained in Appendix F-2, F-3 or F-4, as the context requires (each a "<u>State Stipulation of Dismissal</u>"), or in the form otherwise necessary to effectuate dismissal, with prejudice; and

(9)    Wire instructions for use by the QSF Administrator in connection with any settlement award to be made to such Program Participant, subject to and in accordance with the terms of this Agreement and the Qualified Settlement Fund Agreement.

**(B)**    To the extent Bayer has obtained through Litigation Management, Inc. ("<u>LMI</u>") any medical or pharmacy record for any Program Participant, such Program Participant's counsel shall be entitled to acquire said records from LMI at LMI's rates in accordance with CMOs entered in the MDL.

**(C)**    Program Participants reserve the right to submit additional records to the Claims Administrator, beyond those that are required, if reasonably related to the Program Participant's Gallbladder Injury.

**Section 3.04**    Medical Records

**(A)**    Program Participants are responsible for obtaining and submitting the Medical Records required for a Claim Package.  Program Participants consent to review of their Medical Records and any additional records by the Claims Administrator (and those employed, or engaged by, the Claims Administrator), NPC, Defendant's counsel, Lien resolution personnel, the Special Master, and the courts.

**(B)**    Defendants reserve the right to examine Medical Records submitted by Program Participants for pharmacovigilance purposes.  Each Program Participant's counsel has the right to examine their client's records submitted by Defendants.

**Section 3.05**    Consideration of Claim Packages

**(A)**    A Claims Administrator shall be selected by BHCP subject to agreement by NPC to review all Claim Packages submitted to the Program and to determine whether a claim is an Eligible Claim entitled to payment under the terms of the Agreement.  The Claims Administrator also shall determine the amount, if any, to which the Program Participant is entitled.

All fees and expenses of the Claims Administrator shall be borne by BHCP.

**(B)**     The Claims Administrator will review each Claim Package. The Claims Administrator shall inform the Program Participant's counsel, by email, within 90 days (unless the Claims Administrator provides notice that additional time is required) after submission of the Claim Package or, in the case of a Program Participant who fails to submit any Claim Package, within 30 days (unless the Claims Administrator provides notice that additional time is required) after the Claim Package Deadline (each a "Notice"), whether any or all of the Supporting Documentation is missing, inadequate or incomplete.  Any Claim Package that cannot, or for any reason does not, include all of the required Supporting Documentation shall be considered incomplete and fails to establish an Eligible Claim, and subjects the Claimant's case to dismissal with prejudice, as described below, without compensation absent timely cure as set forth herein. The Claims Administrator will review any timely provided materials to address deficiencies within a reasonable period of time after submission of the same and will send an additional notice (each a "Second Notice") to any Program Participant's counsel whose Claim Package remains deficient.

**(C)**     The decision as to the completeness and adequacy of the Claim Package is in the sole discretion of the Claims Administrator, subject to the terms of Section 5.03(F) below.  Failure to correct the deficiencies on or before the later of (x) the thirtieth (30th) day following the date of the Notice or (y) if the Program Participant on or before the thirtieth (30th) day following the date of the Notice has provided to the Claims Administrator a reasonable justification for requiring more than a 30-day cure period (as determined by the Claims Administrator in good faith), the sixtieth (60th) day following the date of the Notice (as applicable, the "Cure Deadline"), will result in automatic rejection of the Claim Package, and the Claims Administrator shall deliver the Release and the Stipulation of Dismissal, if provided, to BHCP, or, if BHCP is not a Defendant in the case, any Defendant in such case. BHCP, or, if BHCP is not a Defendant in the case, any Defendant in such case, may thereupon file the Stipulation of Dismissal with the appropriate court, subject to the resolution of any request for reconsideration or appeal, if permitted by this Agreement. However, BHCP, or, if BHCP is not a Defendant in the case, any Defendant in such case, shall provide a final 10 day notice to the Program Participant's counsel in writing before filing the Stipulation of Dismissal advising that if no action is taken, the Stipulation of Dismissal will be filed.

**(D)**     In the event that the Program Participant does not submit a Release or a Stipulation of Dismissal by the Cure Deadline, BHCP, or, if BHCP is not a Defendant in the case, any Defendant in such case, may submit a motion to dismiss the Program Participant's case with prejudice. Such motions

14

shall be made in accordance with Section 4.02.  A Claimant may cure a deficiency relating to a Release or Stipulation of Dismissal during the pendency of a motion on a showing of good cause.

**Section 3.06**   Award Payment

    **(A)**   The dollar amount of each individual Program Participant's settlement award will be determined after all Claim Packages have been reviewed (each a "<u>Preliminary Award</u>"), and, as necessary, again after all appeals permitted by Section 5.03(F) are resolved as to all awards, and, in the event the Pre-Cap Total exceeds the Cap, after all awards have been adjusted accordingly (each a "<u>Final Award</u>").

    **(B)**   After determining the Preliminary Awards, the Claims Administrator will send notice containing the amount of the Preliminary Awards (the "<u>Preliminary Award Notice</u>") to BHCP's counsel and counsel for the respective individual Program Participants who submitted the Claim Package.  In the event that any individual Program Participant has submitted their Claim Package pro se, the notice shall be sent directly to the individual Program Participant.

    **(C)**   A Preliminary Award may be subject to appeal solely in accordance with the terms of Section 5.03(F) below and any Preliminary Award that is not timely appealed shall become final, subject to adjustment in the event the Pre-Cap Total exceeds the Cap.

    **(D)**   After all Final Awards have been determined, the Claims Administrator will send notice containing the amount of the Final Awards (the "<u>Final Award Notice</u>") to BHCP's counsel and the respective individual Program Participants or their counsel, if any.

    **(E)**   Final Award payments will be issued from the Qualified Settlement Fund after the resolution of any and all appeals and subject to the terms of Article VIII below and after the Claims Administrator has directed the QSF Administrator to make such payments.

**Section 3.07**   No Program Participant shall be entitled to any payment, other than in accordance with the terms of Section 2.01 and 3.06 above, nor shall any Program Participant be entitled to pursue any claim for any other injury allegedly resulting from the use of a DCOC, including, but not limited to, any VTE or ATE Injury.  Program Participants disclaim any claim to receive any punitive, exemplary, or emotional damages and understand and agree that no payment made hereunder is or shall be deemed to be attributable to punitive, exemplary, or emotional damages.

## Article IV.   Special Master

**Section 4.01**   Special Master Appointment

For the sake of uniformity in rulings and efficiency, NPC and BHCP agree (a) to recommend to the respective courts that each court appoint Professor Stephen A. Saltzburg as Special Master for the purpose of making recommendations on certain motions to dismiss, as described in Section 4.02, and (b) to privately appoint Professor Saltzburg as Special Master for purpose of hearing appeals of the Claims Administrator's determinations, as described in Section 4.03.  The individual initially appointed as Special Master, as well as any successor thereto, is referred to herein as the "Special Master."  Any successor to the initial Special Master shall fulfill the same functions from and after the date of his succession and shall be bound by the determinations made by his predecessor(s) to date.

**Section 4.02**   Motions to Dismiss

The Special Master will (a) hear all motions to dismiss claims that fail to comply with the terms of this Agreement, and (b) recommend to the MDL Court or to the respective federal court or state court judge, as the case may be, a ruling on each of the motions to dismiss.  If the Judge presiding over any specific case in which the Cure Deadline is not met has not appointed the Special Master on or prior to the Cure Deadline, any associated motion to dismiss shall be made to the presiding Judge in the jurisdiction where the case is pending.

**Section 4.03**   Review of Appeals from Claims Administrator Determinations

NPC and BHCP select Professor Stephen A. Saltzburg to hear appeals of the Claims Administrator's determinations as to whether a Program Participant is entitled to payment and, if so, the amount of that payment. Professor Saltzburg's rulings on these appeals are final and not further appealable. Professor Saltzburg's rulings on these appeals are separate from recommendations he makes as a Special Master on appointment from the MDL or other courts.

**Section 4.04**   Special Master's Costs

In the event that the Special Master shall find that a motion or appeal, or opposition thereto, is without good faith or foundation under the terms of this Agreement, the Party making such submission shall pay the costs of the Special Master for his consideration of such motion.  In the absence of such a finding, BHCP shall pay the Special Master's costs.

## Article V.   Claims Administrator

**Section 5.01**   Claims Administrator Selection

**(A)**   This Agreement is a private agreement.

16

**(B)**  At the request of BHCP and with the agreement of the NPC, BrownGreer PLC has agreed to preside over the Program as the Claims Administrator. Any successor to the initial Claims Administrator shall fulfill the same functions from and after the date of his succession and shall be bound by the determinations made by his predecessor(s) to date.

(1)  In the event that BHCP and the NPC are unable to agree upon the appointment of a mutually agreeable successor Claims Administrator, BHCP's counsel and the NPC will each present two (2) candidates to the MDL Court.

(2)  The MDL Court will, in consultation with the judges presiding over, respectively, the California Coordinated Proceedings, the New Jersey Coordinated Proceedings and the Philadelphia Court of Common Pleas Coordinated Proceedings, interview the candidates in camera to determine who will serve as the successor Claims Administrator.  The order of the MDL Court will be final and non-appealable.

**(C)**  BHCP shall pay all fees and costs of the Claims Administrator as set forth in Section 2.04 above, subject to the terms of Section 5.05 below.

**Section 5.02**  Claims Administrator Liaisons

NPC and BHCP each designate the following liaisons for communicating with the Claims Administrator regarding the Program and answering any questions that the Claims Administrator may have with respect to the interpretation of any provision of this Agreement ("Claims Administrator Liaisons"):

**(A)**  BHCP:

Douglas Beck
Shook, Hardy & Bacon L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108-2613
dbeck@shb.com
Phone: (816) 474-6550

and

Jeffery Fields
Shook, Hardy & Bacon L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108-2613
jfields@shb.com
Phone: (816) 559-2266

17

**(B)**     NPC:

Michael S. Burg
Burg Simpson Eldredge Hersh & Jardine, P.C.
40 Inverness Drive East
Englewood, CO  80112
Phone:  (303) 792-5595
Fax:  (303) 708-0527
yazgbnotice@burgsimpson.com

Michael A. London
Douglas & London, P.C.
111 John Street
Suite 1400
New York, NY  10038
Phone:  (212) 566-7500
Fax:  (212) 566-7501
mlondon@douglasandlondon.com

Richard D. Meadow
The Lanier Law Firm
126 East 56th Street
New York, NY  10022
Phone:  (212) 421-2800
Fax:  (917) 546-0464
rdm@lanierlawfirm.com

Daniel S. Robinson
Robinson Calcagnie Robinson Shapiro Davis, Inc.
19 Corporate Plaza Drive
Newport Beach, CA  92660
Phone:  (949) 720-1288
Fax:  (949) 720-1292
drobinson@rcrlaw.net

and

Michael M. Weinkowitz
Levin Fishbein Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA  19106
Phone:  (215) 592-1500
Fax:  (215) 592-4663
YazGBNotice@lfsblaw.com

18

**Section 5.03**   Responsibilities and General Authority

(A)   The Claims Administrator must uphold the responsibilities for claim administration, review, and adjustment set forth in this Agreement as well as any additional responsibilities, if any, set forth in any subsequent amendments to this Agreement.

(B)   The Claims Administrator shall have the authority to perform all actions, to the extent not expressly prohibited by, or otherwise inconsistent with, any provision of this Agreement, deemed by the Claims Administrator to be reasonably necessary for the efficient and timely administration of this Agreement.  For the avoidance of doubt, the Claims Administrator shall not serve as the QSF Administrator under the terms of the Qualified Settlement Fund Agreement.

(C)   The Claims Administrator may create administrative procedures, supplementary to (and not inconsistent with) those specified herein or in the Appendices hereto, that provide further specific details about how the Program is to be administered, and/or other aspects of the Program; provided, however, that such procedures comply, or otherwise are not in conflict, with the terms of this Agreement, and to which NPC and BHCP agree.

(D)   Without limitation of the foregoing, the Claims Administrator shall have the authority to modify and/or supplement the Claim Form to provide for more efficient administration of the Program, provided that (i) such changes may not materially alter the substance of such form without the consent of BHCP and the NPC, (ii) no change shall be made in the form of Release or form of Stipulation of Dismissal without BHCP's and the NPC's prior written consent, and (iii) no Program Participant who previously completed an earlier iteration of the Claim Form shall be required to submit the new Claim Form.

(E)   For cases filed and served in the MDL as of the Filing Deadline, the Claims Administrator shall notify the counsel of record for each case as to whether the claim has been automatically opted into the Program or has not been automatically opted into the Program.  Such notice shall be provided within twenty (20) days after the Filing Deadline by a method selected by the Claims Administrator as the most efficient.  If there is more than one counsel of record on the complaint, the notice shall be given to the counsel listed first. If the claimant is pro se, notice shall be provided directly to the pro se claimant by first class mail.

(F)   The Claims Administrator will determine whether a claim is an Eligible Claim entitled to payment under the terms of this Agreement.  The Claims Administrator also will determine the amount, if any, to which the Program Participant is entitled.  If the Claims Administrator determines

19

that a claim is not an Eligible Claim entitled to payment, or if a Program Participant disputes the amount to which the Program Participant is entitled under this Agreement, the Program Participant may seek reconsideration by filing a request for reconsideration with the Claims Administrator within ten (10) days of receiving the Notice, the Second Notice, or the Preliminary Award Notice, as applicable. The Claims Administrator will respond to any such request for reconsideration within fourteen (14) days (unless the Claims Administrator provides notice that additional time is required).  The Claims Administrator's response to any request for reconsideration as to (y) whether a claim is an Eligible Claim entitled to payment or (z) the amount to which a Program Participant with an Eligible Claim is entitled under this Agreement shall be subject to appeal by the Program Participant only to Professor Saltzburg.  (A Program Participant may not appeal the Claims Administrator's initial determination as to whether a claim is an Eligible Claim or the amount to be paid, if any, and may only appeal the Claims Administrator's response to a request for reconsideration.  If the Program Participant fails to timely file a request for reconsideration, no appeal may be brought.)  Notice of any permitted appeal (each a "<u>Notice of Appeal</u>") must be sent to Professor Saltzburg within fifteen (15) days from the date of the Claims Administrator's response to the request for reconsideration.  Professor Saltzburg's consideration of any such appeal shall be limited to the record evidence that was before the Claims Administrator.  Professor Saltzburg must render a decision within thirty (30) days of receipt of the appeal. The losing party following any such appeal (BHCP or the appealing Program Participant, as applicable) shall be required to pay the costs of Professor Saltzburg in considering the appeal in the fixed amount of $500. The decision of Professor Saltzburg shall itself be final, binding and non-appealable (i.e., it shall not be subject to further appeal, either within the Program or to any court or arbitrator).  If a Program Participant fails to timely request reconsideration or to meet the Notice of Appeal deadline set forth herein, as applicable, the Program Participant's right to appeal shall be extinguished and the Claims Administrator's decision shall be final, binding and non-appealable.

**Section 5.04**   Liability of Administrative Personnel

No Claims Administrator, or employee or agent of any Claims Administrator, shall be liable to any Eligible Claimant, Program Participant, or their respective counsel for his acts or omissions, or those of any agent or employee of any Claims Administrator, in connection with the Program except, with respect to each such Person, for such Person's own willful misconduct.  Nothing in this Section 5.04 confers on any Eligible Claimant, Program Participant, or their respective counsel any privity of contract with, or other right to institute any action against, any Claims Administrator.  In the event that the Claims Administrator must comply with any discovery obligations related to its work under this Agreement, the

requesting party bears the cost of complying with such discovery obligation and such work and costs are expressly excluded from this Agreement.

**Section 5.05**   BHCP/NPC Audit Right

(A)     BHCP and the NPC shall each have the absolute right and discretion at any time or from time to time, but at its own expense, to itself conduct, or have conducted by an independent auditor, audits to verify Claim Packages submitted by Program Participants or any aspect thereof; such audits may include individual Claim Packages or groups of Claim Packages. To this end, each Party shall have the right to submit additional records that it has gathered on individual Program Participants that are reasonably related to the Program Participant's Gallbladder Injury.  For any such additional records the submitting Party shall provide full copies to the other Party.  The Claims Administrator shall fully cooperate with any such audit.

(B)     BHCP or the NPC shall notify the other (and the Claims Administrator) of any audit that it is conducting or having conducted pursuant to Section 5.05(A) and which Claim Packages (if any in particular) are to be audited.

(C)     With respect to Claim Packages which are selected for audit:

(1)     The Party  requesting the audit may require that the relevant Program Participant provide it with (i) identification of and authorizations for the release of all relevant Medical Records from all relevant general practitioners, family physicians, primary care providers, internists, prescribing physicians, pharmacies, treating gynecologists, treating obstetricians, surgeons, and inpatient or outpatient hospitals or any other relevant healthcare providers who, at any time during the three-year period prior to, or the one-year period after, the date of the alleged Gallbladder Injury that is the basis of such Program Participant's Claim, rendered any medical care to and/or were consulted by the Program Participant for such Claim, and (ii) such other relevant records or other documentation within the Program Participant's (or her counsel's) custody, possession, or control as may reasonably be requested by BHCP (including a signed copy of the retainer agreement, redacted to remove all information other than information sufficient to show the identity of the client, firm, litigation, and date the retainer agreement was executed, between any Program Participant and her counsel whose case had not been filed on or before the Execution Date) or the NPC.

(2)     The Party requesting the audit shall be responsible for the costs of the same.  Further, as between BHCP and the NPC, the Party requesting the audit shall at its sole cost and expense provide to the

other Party copies of any information and documentation received pursuant to subclause (1) above.

(3)    If the Program Participant fails or refuses to provide any material records or other documentation (reasonably available to such Program Participant or her counsel) after being afforded an adequate opportunity to do so, then Section 5.05(E)(1), (2), and (3) shall be applied to such Program Participant and her Claim.

**(D)**    If following completion of its audit of a Claim Package, BHCP or the NPC is of the view that any reasonable indicia of deception, dishonesty, or fraud relating to any Claim Package or in any way to the Program exist, BHCP or the NPC, as the case may be, may petition the Special Master (or, if in a jurisdiction where the Special Master has not been appointed, the court where the case was filed)  under seal, with copies being provided to Program Participant's counsel (or, if pro se, to the Program Participant) and BHCP's counsel or NPC (depending on who may file) pursuant to Section 12.01. All initial filings shall be in the MDL Court unless the MDL Court lacks subject matter jurisdiction in which case the motion shall be filed in the court in which the case was filed.  Any ruling of the Special Master may be appealed to the MDL Court or, should the MDL Court lack subject matter jurisdiction, to the court in which the case was filed.

**(E)**    Without limitation of Section 5.05(D) and any term in this Agreement to the contrary notwithstanding, in the event that the Special Master, upon motion by the Claims Administrator, BHCP, or the NPC, determines that a Program Participant, or counsel for such Program Participant, has used, or that there is substantial evidence that a Program Participant, or counsel for such Program Participant, has used deception, dishonesty, or fraud in connection with the Claim of such Program Participant:

(1)    such Program Participant's Claim shall be denied and such Program Participant immediately shall cease to have any further rights under the Program, but such Program Participant's Stipulation of Dismissal and Release shall be delivered to BHCP, or, if BHCP is not a Defendant in the case, any Defendant in such case (and, without limitation, BHCP, or, if BHCP is not a Defendant in the case, any Defendant in such case, shall be free to file or cause to be filed such Stipulation of Dismissal and/or Release in any relevant action or proceeding);

(2)    each of such Program Participant (if the Special Master makes such determination in respect of such Program Participant) and such counsel (if the Special Master makes such determination in respect of such counsel) shall fully be liable (i) for the costs and expenses (including legal costs and expenses) incurred by the

Claims Administrator, BHCP and/or the NPC in connection with any related audit and/or any related proceedings (including MDL Court, or other court, proceedings) under this Section 5.05 and (ii) if applicable, to repay to BHCP any Final Award previously paid to or with respect to such Program Participant (and any such repayment of such Settlement Payment in whole or in part shall be disregarded for purposes of Article II); and

(3)     such Program Participant, such counsel and/or such counsel's other Program Participants shall be subject to such further sanctions or other penalties as the Special Master may impose, including (i) in the case of such counsel (and/or such counsel's other Program Participants), raising the level of scrutiny of (including conducting audits), modifying the timing of the review of, and/or requiring such counsel to pay the costs and expenses associated with any future audits of, any other Claim of any or all of the other Program Participants for which it is counsel, (ii) suspension of any Final Award payments to all other Program Participants of such counsel until such time as may be determined by the applicable court, or (iii) referral of the matter to the United States Attorney or other appropriate law enforcement officials, underlined provided that no such further sanctions or other penalties shall affect the status of any other Program Participant or its Claim unless such sanction or other penalty is consented to by BHCP and the NPC.

**(F)**     All audits shall be initiated in good faith.

**Article VI.**     Dismissals, Disclaimers, and Releases

**Section 6.01**   Dismissals

**(A)**     MDL Cases Subject to Automatic Enrollment

(1)     Defendants are entitled to dismissal with prejudice of all MDL Cases that are subject to automatic enrollment in the Program, and that do not opt out of the Program, as set forth above, in accordance with the following schedule:

| Circumstance | Timing of Dismissal |
|---|---|
| Does not submit or untimely submits "Notice of Intent to Opt Out Form," and fails to submit a complete Claim Package by the Cure Deadline | BHCP, or, if BHCP is not a Defendant in the case, any Defendant in such case, is entitled to file with the MDL Court the Stipulation of Dismissal submitted with the Claim Package at any time following the Cure Deadline or if the deficiency relates to the Stipulation of Dismissal, BHCP, or, if BHCP is not a Defendant in the case, any Defendant in such case, is entitled to move to dismiss the Claimant's case with prejudice following the Cure Deadline, in each case subject to the resolution of any request for reconsideration, and/or appeal, if permitted by this Agreement. *See, e.g.,* Sections 3.01, 3.05 and 5.03. |
| Submits Claim Package, but Program Participant is not entitled to a settlement award<br><br>Or<br><br>Submits completed Claim Package and is entitled to a Final Award | BHCP, or, if BHCP is not a Defendant in the case, any Defendant in such case, is entitled to file with the MDL Court the Stipulation of Dismissal submitted with the Claim Package at any time following the Claims Administrator's determination of the Final Award or determination that the Claimant is entitled to no award, subject to the resolution of any request for reconsideration, and/or appeal, if permitted by this Agreement. *See, e.g.,* Sections 3.05, 3.06, and 5.03. |

    **(B)**    Other Federal Cases, and MDL Cases not Subject to Automatic Enrollment

        (1)    Defendants are entitled to dismissal with prejudice of all Federal Cases pending in federal court other than the MDL Court, and all MDL Cases, that are not subject to automatic enrollment in the Program and that opt in to the Program, as set forth above, in accordance with the following schedule:

| Circumstance | Timing of Dismissal |
|---|---|
| Timely submits "Notice of Intent to Opt In Form," and fails to submit a complete Claim Package by the Cure Deadline | BHCP, or, if BHCP is not a Defendant in the case, any Defendant in such case, is entitled to file with the relevant court the Stipulation of Dismissal submitted with the Claim Package at any time following the Cure Deadline or if the deficiency relates to the Stipulation of Dismissal, BHCP, or, if BHCP is not a Defendant in the case, any Defendant in such case, is entitled to move to dismiss the Claimant's case with prejudice following the Cure Deadline, in each case subject to the resolution of any request for reconsideration, and/or appeal, if permitted by this Agreement. *See, e.g.,* Sections 3.01, 3.05 and 5.03. |
| Submits Claim Package, but Program Participant is not entitled to a settlement award<br><br>Or<br><br>Submits Claim Package and is entitled to a Final Award | BHCP, or, if BHCP is not a Defendant in the case, any Defendant in such case, is entitled to file with the relevant court the Stipulation of Dismissal submitted with the Claim Package at any time following the Claims Administrator's Final Award determination or determination that the Claimant is entitled to no award, subject to the resolution of any request for reconsideration and/or appeal, if permitted by this Agreement. *See, e.g.,* Sections 3.05, 3.06, and 5.03. |

**(C)**     State Cases

(1)     Defendants are entitled to dismissal with prejudice of State Cases that opt in to the Program, as set forth above, in accordance with the following schedule:

| Circumstance | Timing of Dismissal |
|---|---|
| Timely submits "Notice of Intent to Opt In Form," and fails to submit a complete Claim Package by the Cure Deadline | BHCP, or, if BHCP is not a Defendant in the case, any Defendant in such case, is entitled to file with the relevant court the Stipulation of Dismissal submitted with the Claim Package at any time following the Cure Deadline or if the deficiency relates to the Stipulation, BHCP, or, if BHCP is not a Defendant in the case, any Defendant in such case, is entitled to move to dismiss the Claimant's case with prejudice following the Cure Deadline, in each case subject to the resolution of any request for reconsideration, and/or appeal, if permitted by this Agreement.  *See, e.g.,* Sections 3.01, 3.05 and 5.03. |
| Submits Claim Package, but Program Participant is not entitled to a settlement award<br><br>Or<br><br>Submits Claim Package and is entitled to a Final Award | BHCP, or, if BHCP is not a Defendant in the case, any Defendant in such case, is entitled to file with the relevant court the Stipulation of Dismissal submitted with the Claim Package at any time following the Claims Administrator's Final Award determination or determination that the Claimant is entitled to no award, subject to the resolution of any request for reconsideration, and/or appeal, if permitted by this Agreement.  *See, e.g.,* Sections 3.05, 3.06, and 5.03. |

**Section 6.02**   Disclaimers

**(A)**     Program Participants and Defendants are bound by decisions made by the Special Master and/or the Claims Administrator, including ones with which they may disagree. This eventuality is part of the Program and is accepted by Program Participants, subject to the limited right of appeal set forth above in Section 5.03(F).

(B)     Program Participants disclaim any claim to receive any punitive or emotional damages and understand and agree that no payment made hereunder is or shall be deemed to be attributable to punitive or emotional damages.

**Section 6.03**   Releases

In summary and as fully reflected in the Release, as consideration for Defendants entering into this Agreement, Program Participants unconditionally release whatever rights they have or may have against Defendants, their agents, servants, employees, officers and directors, and all health care professionals, health care providers, health care facilities, pharmacies and other distributors of DCOCs, and all of these individuals and entities, parents and subsidiaries, affiliates, agents, attorneys, servants, employees, officers and directors, and those who acted in concert with them together with their respective insurers.

**Article VII.**   Court Approval and Other Documentation

**Section 7.01**   Survival and Wrongful Death Claims

If required by applicable state law, a Program Participant's counsel or a Person authorized by a Program Participant's counsel will seek court approval of the settlement of the case brought on behalf of a decedent or others authorized under applicable state law to advance survival or wrongful death claims.  Program Participants' counsel will assume responsibility for all necessary filings relating to notice and approval of the settlement and the Program Participants will be responsible for all associated costs and expenses.

**Section 7.02**   Claims Involving Minors

If required by applicable state law, a Program Participant's counsel or a Person authorized by a Program Participant's counsel will seek court approval of the settlement of the case brought on behalf of a minor.  Program Participants' counsel will assume responsibility for all necessary probate and guardianship filings, all filings relating to court approval of settlement, and all issues or rulings arising therefrom or related thereto.

**Section 7.03**   Other Documents

BHCP and Program Participants agree to cooperate in acquiring or executing any other documents necessary to finalize an individual Program Participant's settlement.

**Article VIII.**  Liens

**Section 8.01**   Medical Bills, Liens, and Other Potential Rights for Reimbursement

Subject to the terms of Section 2.01, BHCP shall deposit into the Qualified Settlement Fund amounts necessary to pay those Program Participants who have submitted Eligible Claims that have been approved for payment by the Claims Administrator. Each Program Participant and her counsel agree that an amount equal to the total determined in accordance with Section 8.01(B)(3)(d) and Section 8.01(C)(2)(c)-(C)(2)(e), as each such Section may apply, will be withheld from the Program Participant's Final Award and maintained within the Qualified Settlement Fund.  The funds withheld from the Program Participant's Final Award in accordance with the foregoing sentence shall only be released from the Qualified Settlement Fund to the Program Participant (a) when there is a final and binding agreement between the Program Participant and the Governmental and/or Private Payors that provides for a  full release of any and all entities, including the Released Parties, by all such Payors with regard to the Program Participant or (b) to the extent the total amount withheld is reduced by applying the calculations in accordance with Section 8.01(B)(3)(d) and Section 8.01(C)(2)(c)-(C)(2)(e), as each may apply.  The funds withheld in the Qualified Settlement Fund may be paid from the Qualified Settlement Fund directly to the Governmental and/or Private Payor at the direction of the Program Participant to the extent of such Payor's interests.

**(A)**   Responsibility for Satisfaction of All Medical Expenses and Liens

(1)   Each Program Participant agrees that it is her sole responsibility to pay, have paid or otherwise discharge and satisfy all past and present bills, costs, or Liens resulting from or arising out of the Program Participant's alleged injury from use of DCOCs.  Each Program Participant agrees that the Released Persons shall have no responsibility to pay or have paid any future bills, costs, or Liens resulting from or arising out of the Program Participant's alleged use of DCOCs. Each Program Participant further represents and warrants that she will not seek from any Released Person any compensation for any future bills, costs, or Liens resulting from or arising out of the Program Participant's alleged use of DCOCs. Each Program Participant agrees that the Released Persons shall have no responsibility whatsoever for satisfaction of any and all Liens, of any kind, that arise from or are related to payments made or services provided to such Program Participant, or on such Program Participant's behalf, and past, present, or future bills, costs or Liens incurred in connection with the claims asserted by such Program Participant related to such Program Participant's alleged use of DCOCs.  Further, each Program Participant agrees that the Released Persons shall have no responsibility to pay or have paid any bills, costs or expenses arising out of or in

28

connection with the actions of the Lien Resolution Firm or the Private Lien Resolution Program contemplated by this Agreement.

(2)    Each Program Participant shall indemnify, repay and hold the Released Persons harmless from any and all such bills, costs or Liens, known or unknown, and whether existing as of the date of becoming a Program Participant or arising thereafter.  Specifically, and without limitation, if any governmental entity, or anyone acting on behalf of any governmental entity, seeks penalties, damages, multiple damages (including double damages), or any other amounts from any Released Person relating to payments by such governmental entity, or anyone acting by contract or otherwise on behalf of such governmental entity, arising from or relating to the Program Participant's alleged use of DCOCs, then the Program Participant shall indemnify, repay, and hold the Released Persons harmless from any and all such penalties, damages, claims, and rights to payment, including any attorneys' fees, from such entities.

**(B)**    Procedure Regarding Payments by Governmental Payors

With respect to potential payments made on a Program Participant's behalf by Medicare, a Medicare intermediary or carrier; any other federal or state government, agency or entity; or any other entity operating under contract with any of the previously mentioned entities (collectively "Governmental Payors"), then as **CONDITIONS PRECEDENT** to the distribution of any Final Award from the Qualified Settlement Fund to the Claimant, each Program Participant and her counsel agree as follows:

(1)    Identification of Governmental Payors.  Each Program Participant and her counsel agree to identify every Governmental Payor that may have made any payments on behalf of such Program Participant in any way related to such Program Participant's alleged use of DCOCs from the time the Program Participant alleges she first suffered injury from the alleged use of DCOCs through the Execution Date. Each Program Participant and her counsel represent and warrant they will use best efforts and reasonable diligence to identify such Government Payors.

(2)    Notice of Settlement.  Each Program Participant and her counsel agree to provide BHCP's attorneys, either directly or through the Lien Resolution Firm, a copy of a letter or other communication notifying each Governmental Payor identified pursuant to Section 8.01(B)(1) that: (i) a claim related to the Program Participant's alleged use of DCOCs has settled; and (ii) requesting a written response indicating whether each Governmental Payor holds any interest, including liens and subrogation interests, related in any

29

way to such Program Participant's alleged use of DCOCs and the claimed amount of any such interest.

(3)    Satisfaction of Governmental Payors' Interests. Each Program Participant and her counsel agree, either directly or through the Lien Resolution Firm, to provide to BHCP's counsel written documentation demonstrating that each Governmental Payor identified pursuant to Section 8.01(B)(1) either:

(a)    holds no interest, including any Liens, in the Final Award; or

(b)    expressly releases any and all entities from any liability whatsoever for any interest, including any Liens, in the Final Award; or

(c)    agrees any interest, including any Liens, in the Final Award has been finally and completely satisfied; or

(d)    has reached a binding agreement with the Program Participant setting forth in detail a specific dollar amount or percentage of the Final Award that the Governmental Payor agrees is the maximum amount it will seek from any and all Persons to fully and finally resolve any interest, including any Liens, in the Final Award.

For the avoidance of doubt, the CONDITION PRECEDENT in this Section is not a CONDITION PRECEDENT to BHCP's funding obligations into the Qualified Settlement Fund under Section 2.01 but is only a CONDITION PRECEDENT to the distribution of any funds withheld from the Program Participant's Final Award from the Qualified Settlement Fund to the Program Participant.

**(C)**    Procedure Regarding Payments by Private Payors

With respect to potential payments made on a Program Participant's behalf by any for profit or not for profit, non-governmental healthcare plan, health insurer, managed care organization, labor union welfare plan, joint union and employer welfare plan, self-funded employer plan or any other non-governmental organization, including any entity operating under a contract with any of the foregoing (collectively "Private Payors"), then as CONDITIONS PRECEDENT to the distribution of any Final Award from the Qualified Settlement Fund to the Claimant, each Program Participant and her counsel agree as follows:

(1)    Identification of Private Payors.  Each Program Participant and her counsel agree to identify every Private Payor that may have made any payments on behalf of such Program Participant in any way

related to such Program Participant's injury from the alleged use of DCOCs from the time the Program Participant alleges she first suffered injury from the alleged use of DCOCs through the Execution Date. Each Program Participant and her counsel represent and warrant they will use best efforts and reasonable diligence to identify such Private Payors.

(2)     <u>Satisfaction of Private Payors' Interests</u>. Each Program Participant and her counsel agree to comply with the requirements of one of the five options below relating to protecting the interests of Private Payors:

    (a)     Option 1: Each Program Participant and her counsel agree to satisfy each and every requirement of Section 8.01(B) above with respect to all Private Payors identified pursuant to Section 8.01(C)(1).

    (b)     Option 2: If the Program Participant and each and every Private Payor identified pursuant to Section 8.01(C)(1) participate in the The YAZ Products Liability Litigation Private Lien Resolution Program administered by the Garretson Resolution Group ("<u>PLRP</u>"), then no amount needs to be withheld for payment of the Private Payors.

    (c)     Option 3: If a Program Participant participates in the PLRP but at least one of the Private Payors identified pursuant to Section 8.01(C)(1) does not participate in the PLRP ("<u>Non-Participating Private Payor</u>") and the Program Participant provides notice of this settlement as set forth in Section 8.01(B)(2) to each such Non-Participating Private Payor, then such Program Participant and her counsel agree: (1) 30% of the gross settlement proceeds shall be withheld in the Qualified Settlement Fund; (2) the 30% shall be released 45 days after notice is given <u>unless</u> any Non-Participating Private Payor asserts a right to a portion of the settlement proceeds during these 45 days; and (3) if any Non-Participating Private Payor asserts a right to a portion of the settlement proceeds during these 45 days, the 30% shall be released only when the Program Participant has reached a binding agreement with such Non-Participating Private Payors as set forth in Section 8.01(B)(3)(d). If all such Non-Participating Private Payors agree to participate in the PLRP, then the procedures set forth in Section 8.01(C)(2)(b) shall govern.

    (d)     Option 4: If a Program Participant participates in the PLRP but at least one of the Private Payors identified pursuant to

Section 8.01(C)(1) is a Non-Participating Private Payor and the Garretson Resolution Group provides a "generic notice" to such Non-Participating Private Payors, which notice is provided without any identifying information about the Program Participant but states that at least one of the Private Payors' insureds has settled a claim related to the insureds' alleged use of DCOCs and that a PLRP has been established, then such Program Participant and her counsel agree: (1) 30% of the gross settlement proceeds shall be withheld in the Qualified Settlement Fund; (2) the 30% shall be released 120 days after generic notice is given <u>unless</u> any Non-Participating Private Payor asserts a right to a portion of the settlement proceeds during these 120 days; and (3) if any Non-Participating Private Payor asserts a right to a portion of the settlement proceeds during these 120 days, the 30% shall be released only when such Program Participant has reached a binding agreement with such Non-Participating Private Payors as set forth in Section 8.01(B)(3)(d). If all such Non-Participating Private Payors agree to participate in the PLRP, then the procedures set forth in Section 8.01(C)(2)(b) shall govern.

(e)     Option 5: If a Program Participant does not participate in the PLRP and refuses to give notice to each and every Private Payor identified pursuant to Section 8.01(C)(1), then such Program Participant and her counsel agree: (1) 30% of the gross settlement proceeds shall be withheld in the Qualified Settlement Fund; (2) the 30% shall be released two years from the date such Program Participant's Release is executed <u>unless</u> any Private Payor asserts a right to a portion of the settlement proceeds during these two years; and (3) if any Private Payor asserts a right to a portion of the settlement proceeds during these two years, the 30% shall be released only when the Program Participant has reached a binding agreement with such Private Payors as set forth in Section 8.01(B)(3)(d).

(f)     Option 6:  If a Program Participant did not have a Private Payor or governmental benefits that paid for her treatment, she shall provide an affidavit stating so.  The result of submitting such an affidavit shall be that the entire amount of the award shall be released upon receipt of the affidavit by the Claims Administrator.

For the avoidance of doubt, the CONDITION PRECEDENT in this Section is not a CONDITION PRECEDENT to BHCP's funding obligations into the Qualified Settlement Fund under Section 2.01 but is

only a CONDITION PRECEDENT to the distribution of any funds withheld from the Program Participant's Final Award from the Qualified Settlement Fund to the Program Participant.

**Section 8.02**   Attorney Liens

Each Program Participant shall represent and warrant that all legal expenses, bills, costs or contingency fee agreements resulting from or arising out of representation of such Program Participant by any attorney in relation to such Program Participant's alleged use of DCOCs have been paid or will be paid out of the Final Awards and are the Program Participant's responsibility to pay, and that any Liens based on any legal expenses, bills, costs or contingency fee agreements incurred as a result of the Program Participant's alleged use of DCOCs will be satisfied by such Program Participant.  Each Program Participant will indemnify, repay and hold the Released Persons harmless from any and all such claims.

**Article IX.**   Termination Right

**Section 9.01**   NPC Efforts

NPC will use their best efforts to achieve sufficient participation to meet the participation benchmarks necessary to effectuate the Program.

**Section 9.02**   Walk Away Right

BHCP shall have the option, in its sole discretion, to terminate the Program and this Agreement if less than ninety percent (90%) of the Eligible Claimants in the MDL, any Other Federal Court Proceedings, or any State Court Proceedings, as defined below, constitute Program Participants (the "Walk Away Right").  For purposes of determining whether the foregoing participation threshold has been met, (a) the denominator will include (i) all Eligible Claimants alleging only a Gallbladder Injury; (ii) all Eligible Claimants alleging a Gallbladder Injury in combination with any additional injury other than a VTE or ATE; and (iii) all Eligible Claimants alleging a Gallbladder Injury in combination with a VTE or ATE if, as to each such claim, the Eligible Claimant has enrolled in the Program, and (b) the numerator will include all Eligible Claimants who are Program Participants.  BHCP may exercise the Walk Away Right, if available, on or before 11:59 p.m. C.T. on the thirtieth (30th) day following the last Opt In Deadline attributable to an Eligible Claimant.  BHCP shall exercise its Walk Away Right by filing notice through the MDL Court's Electronic Case Filing System. BHCP also shall provide written notice of its exercise of the Walk Away Right, as applicable, to each of the state court judges presiding over the State Coordinating Courts, with a copy to state-court liaison counsel.  The date on which BHCP's Walk Away Right expires without previously having been exercised shall be the "Effective Date."

**Section 9.03**   Consequences of Exercise of Walk Away Right

Upon exercising the Walk Away Right, the Program shall immediately terminate and this Agreement becomes null and void and all Releases and Stipulations of Dismissal or Motions to Dismiss shall promptly be returned to the NPC, the Claimant's counsel, or the pro se Claimant, as appropriate.  BHCP shall be responsible for payment of any Administrative Expenses incurred through the termination date.

**Article X.**      Warranty of Capacity to Enter into the Agreement

**Section 10.01** NPC

Each Person duly appointed to and comprising the NPC represents and warrants that such Person has all requisite power and authority to execute, deliver and perform this Agreement and to consummate the transactions contemplated hereby. The execution, delivery, and performance of this Agreement and the consummation by such Person of the actions contemplated hereby will be, upon delivery, duly and validly executed and delivered by such Person and will constitute its legal, valid, and binding obligation.

**Section 10.02** BHCP

BHCP represents and warrants that it has all requisite power and authority to execute, deliver, and perform this Agreement and to consummate the transactions contemplated hereby.  The execution, delivery, and performance of this Agreement and the consummation by it of the actions contemplated hereby will be, upon delivery, duly and validly executed and delivered by BHCP and will constitute its legal, valid, and binding obligation.

**Section 10.03** Program Participants

**(A)**      By participating in the Program (whether by not submitting a timely "Notice of Intent to Opt Out Form," if the Program Participant is an Eligible MDL Claimant who does not allege an ATE or VTE in addition to a gallbladder injury, or by submitting a "Notice of Intent to Opt In Form," if she is not an Eligible MDL Claimant or if she is an Eligible MDL Claimant who alleges an ATE or VTE injury in addition to a gallbladder injury), each Program Participant, on her own behalf and on behalf of her heirs, beneficiaries, agents, estates, executors, administrators, personal representatives, successors and assigns, shall be deemed to have agreed to resolve her Claims with Defendants and to have granted her counsel the authority to resolve her Claims with Defendants in accordance with the terms of this Agreement.  Each Program Participant further represents and warrants that she has the sole right and exclusive authority to enter into this Agreement and to submit a Claim Package under it; that neither her Claim nor any of the claims, demands or obligations referred to in this Agreement have been sold, assigned, subrogated, transferred, or

otherwise disposed of by her; and that she is the sole Person who may have a potential cause of action against Defendants relative to her Claim. Each Program Participant further represents and warrants that no other Person or entity has any right, title or interest in her Claim, any of the demands, obligations, or causes of action referred to in this Agreement, or any Final Award to her, and that there are no other Liens (except as may be disclosed in accordance with Article VIII herein) other than the actual or potential attorneys liens of the Program Participant's counsel to the extent such attorneys liens have been perfected.  Private funding agreements are not liens under this Agreement, and are not the responsibility of BHCP. To the extent any Program Participant has received any funding or other consideration from any third party, including any private litigation funding, such Program Participant represents and warrants that such third party has no Lien or other claim that can be asserted against any of the Released Parties or the Qualified Settlement Fund or any portion thereof.  Each Program Participant agrees that she will indicate on his or her Claim Form whether a bankruptcy action is currently pending in which he or she is seeking bankruptcy protection.

**(B)**   Each Program Participant, by participating in the Program as provided for herein, and her counsel acknowledge and agree that they are contractually bound by the terms of this Agreement.

### Article XI.   Public Announcements

**Section 11.01** Purposefully Omitted

## Article XII.   Miscellaneous

**Section 12.01** Notice

    **(A)**    Any notice, request, instruction or other document to be delivered pursuant to this Agreement shall be sent to the appropriate Party as follows, or as otherwise instructed, by a notice delivered to the other Party pursuant to this Section 12.01(A).  Notice may be provided by (i) United States mail, return receipt requested; (ii) to the extent specified hereunder, electronic mail; (iii) facsimile, with a confirming copy sent within one day by regular United States Mail; (iv) prepaid courier; (v) Federal Express; or (vi) personal delivery:

        (1)    If to BHCP:

        Douglas Beck
        Shook, Hardy & Bacon L.L.P.
        2555 Grand Blvd.
        Kansas City, MO 64108-2613
        dbeck@shb.com
        Phone: (816) 421-5547
        Fax: (816) 474-6550

        and

        Jeffery Fields
        Shook, Hardy & Bacon L.L.P.
        2555 Grand Blvd.
        Kansas City, MO 64108-2613
        jfields@shb.com
        Phone: (816) 559-2266
        Fax: (816) 421-5547

        (2)    If to any Program Participant represented by counsel:

        To such Program Participant's counsel as reflected on such Program Participant's Claim Form, or, if such Program Participant has not provided a Claim Form with the necessary contact information, then to the first-listed counsel for such Program Participant, listed on such Program Participant's complaint.

(3)  If to the NPC:

Michael S. Burg
Burg Simpson Eldredge Hersh & Jardine, P.C.
40 Inverness Drive East
Englewood, CO  80112
Phone:  (303) 792-5595
Fax:  (303) 708-0527
yazgbnotice@burgsimpson.com

Michael A. London
Douglas & London, P.C.
111 John Street
Suite 1400
New York, NY  10038
Phone:  (212) 566-7500
Fax:  (212) 566-7501
mlondon@douglasandlondon.com

Richard D. Meadow
The Lanier Law Firm
126 East 56th Street
New York, NY  10022
Phone:  (212) 421-2800
Fax:  (917) 546-0464
rdm@lanierlawfirm.com

Daniel S. Robinson
Robinson Calcagnie Robinson Shapiro & Davis, Inc.
19 Corporate Plaza Drive
Newport Beach, CA  92660
Phone:  (949) 720-1288
Fax:  (949) 720-1292
drobinson@rcrlaw.net

and

Michael M. Weinkowitz
Levin Fishbein Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA  19106
Phone:  (215) 592-1500
Fax:  (215) 592-4663
YazGBNotice@lfsblaw.com

(4)     If to a Program Participant who is not represented by counsel:

To such Program Participant's address as reflected on such Program Participant's Claim Form, or, if such Program Participant has not provided a Claim Form with the necessary contact information, then to such Program Participant's address as reflected on such Program Participant's complaint.

**(B)**     Any notice, request, instruction or other document to be given by any Party or any Claims Administrator to any Program Participant or her counsel hereunder, shall be in writing and delivered in accordance with the terms of Section 12.01(A) above, and such party or Claims Administrator may rely on the contact information last provided by the Program Participant or her counsel to such party or Claims Administrator, as applicable, and no party nor any Claims Administrator shall have any obligation to (but in its sole and absolute discretion may) take other steps to locate Program Participants or counsel as to whom notices, requests, instructions or other documents have been returned as undelivered or undeliverable.  Each Program Participant and (if applicable) her counsel shall have the responsibility to keep the Claims Administrator informed of the correct contact information for both such Program Participant and such counsel.

**(C)**     Any such notice, request, instruction or other document shall be deemed to have been given as of the date so transmitted by facsimile or electronic mail, on the next Business Day when sent by Federal Express, or five Business Days after the date so mailed, <u>provided that</u> if any such date on which any such notice or other communication shall be deemed to have been given is not a Business Day, then such notice or other communication shall be deemed to have been given as of the next following Business Day and, <u>provided</u>, <u>further</u>, that delivery otherwise shall be deemed to occur upon tender and rejection by the intended recipient.

**Section 12.02** Governing Law

The provisions of this Agreement, appendices, and the individual Releases shall be interpreted in accordance with, and governed by, the laws of the State of Illinois (or United States federal law, to the extent applicable), including any applicable statutes of limitation, without regard to any otherwise applicable principles of conflicts of law or choice of law rules (whether of the State of Illinois or any other jurisdiction) that would result in the application of the substantive or procedural rules or law of any other jurisdiction.  The Parties irrevocably submit to the jurisdiction of the Special Master and the MDL Court (or the state court where the case is pending should the MDL Court lack subject matter jurisdiction) for any suit, action, proceeding, or dispute arising out of or relating to the Program, the applicability or enforceability of the Program, or any

document relating to the Program, including the Agreement, any of its Appendices, or the individual Releases.

**Section 12.03** Waiver of Inconsistent Provisions of Law; Severability

    **(A)**    To the fullest extent permitted by applicable law, each Party waives any provision of law (including the common law), which renders any provision of this Agreement invalid, illegal or unenforceable in any respect.

    **(B)**    Any provision of this Agreement which is prohibited or unenforceable to any extent or in any particular context shall be ineffective, but such ineffectiveness shall be limited as follows: (i) if such provision is prohibited or unenforceable only in or as it relates to a particular jurisdiction, such provision shall be ineffective only in or as it relates to (as the case may be) such jurisdiction and only to the extent of such prohibition or unenforceability, and such prohibition or unenforceability in or as it relates to (as the case may be) such jurisdiction shall not otherwise invalidate or render unenforceable such provision (in such or any other jurisdiction); (ii) if (without limitation of, and after giving effect to, clause (i)) such provision is prohibited or unenforceable only in a particular context (including only as to a particular Person or Persons or under any particular circumstance or circumstances), such provision shall be ineffective, but only in such particular context; and (iii) without limitation of clauses (i) or (ii), such ineffectiveness shall not invalidate any other provision of this Agreement.  In any event, upon any such determination that any term or other provision is invalid, illegal or unenforceable, NPC and BHCP shall negotiate in good faith to modify this Agreement so as to effect the original intent of NPC and BHCP as closely as possible to the fullest extent permitted by applicable law.  Nothing in this Section 12.03(B) is intended to, or shall, limit (1) Section 12.03(A) or (2) the intended effect of Section 12.02.

**Section 12.04** Good Faith Negotiations

The NPC and BHCP each acknowledge that: the negotiations leading up to this Agreement were conducted regularly and at arm's length; this Agreement is made and executed by and of each such Party's own free will; each such Party knows all of the relevant facts and its rights in connection therewith; and such Party has not been improperly influenced or induced to make this settlement as a result of any act or action on the part of any other Party or employee, agent, attorney or representative of any other Party. The Parties hereby acknowledge that they entered into this Agreement to compromise permanently and settle the claims between any Program Participant, on the one hand, and BHCP, on the other hand, settled by the execution of this Agreement and the Program Participant's individual Release.

39

**Section 12.05** Construction

(A)    With regard to each and every term and condition of this Agreement, the Agreement has been negotiated, prepared and drafted by the NPC and counsel for BHCP, and if at any time any Party desires or is required to interpret or construe any such term or condition or any agreement or instrument subject hereto, no consideration shall be given to the issue of which Party hereto, or its counsel, actually prepared, drafted or requested any term or condition hereof.

(B)    The headings of the sections, paragraphs and subsections herein are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.  Any reference to an Appendix shall be deemed to refer to the applicable Appendix attached hereto.  The words "include" and "including" and words of similar import when used in this Agreement or any Appendix hereto are not limiting and shall be construed to be followed by the words "without limitation," whether or not they are in fact followed by such words. The definitions contained in this Agreement or any Appendix attached hereto are applicable to the singular as well as the plural forms of such terms.  Words of any gender (masculine, feminine, neuter) mean and include correlative words of the other genders.  As used herein or in any Appendix hereto, the term "dollars" and the symbol "$", shall mean United States dollars.  References herein to instruments or documents being submitted "by" any Person include (whether or not so specified) submission of the same on behalf of such Person by her counsel whether or not so specified, provided that if any particular instrument or document is required herein to be executed by a particular Person, it must (unless otherwise expressly specified herein) be so executed by such Person.  References herein to any particular Section (such as, for example, Section 12.01) shall be deemed to refer to all sub-Sections of such Section (such as, for example, Section 12.01(A), 12.01(B), etc.), all sub-sub-Sections of such sub-Sections, and so on; the corresponding principle applies to all references herein to any particular sub-Section, sub-sub-Section and so on. The words "this Agreement", "herein", "hereof", "hereby", "hereunder" and words of similar import refer to this Agreement as a whole (together with any Appendices attached hereto) and not to any particular subdivision unless expressly so limited or the context requires otherwise.  Any reference herein to this Agreement shall be deemed to include this Agreement as it may be modified, varied, amended or supplemented from time to time.

**Section 12.06** No Third Party Beneficiaries; Assignment

(A)    No provision of this Agreement or any Appendix attached hereto is intended to create any third-party beneficiary hereto or thereto except as expressly set forth herein or therein.  For the avoidance of doubt, nothing

in this Section 12.06 limits or modifies the third-party beneficiary provisions of any Claim Form, Release or Stipulation of Dismissal.  This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and permitted assigns; provided, however, that neither this Agreement nor any of the rights, interests or obligations hereunder may be assigned by any of the NPC or any Program Participant who becomes a Party hereto without the prior written consent of BHCP.  Any assignment in violation of this Section 12.06(A) shall be null and void ab initio.

**(B)**     Without limitation of Section 12.06(A) but also without limitation of any NPC's or any Program Participant's right to enforce this Agreement or an associated individual Release, or in the event of gross negligence by the relevant official under this Agreement, no Program Participant shall have any right to institute any proceeding, judicial or otherwise, against any of Defendants (including Bayer), any Special Master, or any Claims Administrator to enforce, or otherwise with respect to, this Agreement.

**Section 12.07** Further Assurances

From time to time following the Execution Date, (i) each Party shall take such reasonable actions consistent with the terms of this Agreement as may reasonably be requested by any other Party, and otherwise reasonably cooperate with each other Party in a manner consistent with the terms of this Agreement as reasonably requested by each such other Party, and (ii) each Program Participant and her counsel, if any, shall take such reasonable actions consistent with the terms of this Agreement as may reasonably be requested by BHCP or by the NPC, and otherwise reasonably cooperate with BHCP and the NPC in a manner consistent with the terms of this Agreement as reasonably requested by BHCP or the NPC, in the case of each of (i) and (ii) as may be reasonably necessary in order further to effectuate the intent and purposes of this Agreement and to carry out the terms hereof.  To the extent such actions shall be made by counsel, such actions shall be consistent with their duties to their clients who are parties to this Agreement.

**Section 12.08**     Specific Performance

It is understood and agreed by the Parties that money damages would not be a sufficient remedy for any breach of this Agreement by any Party and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach in addition to any other remedy available at law or in equity, without the necessity of demonstrating the inadequacy of money damages.

**Section 12.09**     Entire Agreement

This Agreement contains the entire agreement between or among the Parties with respect to the subject matter hereof and supersedes and cancels all previous

41

agreements, negotiations and commitments between or among the Parties hereto (oral or otherwise) with respect to the subject matter hereof.

**Section 12.010**     Counterparts; Facsimile Signature

This Agreement may be executed in any number of counterparts, each of which shall be an original and all of which shall together constitute one and the same instrument.  It shall not be necessary for any counterpart to bear the signature of all parties hereto.  This Agreement and any amendments hereto, to the extent signed and delivered by means of a facsimile machine or electronic scan (including in the form of an Adobe Acrobat PDF file format), shall be treated in all manner and respects as an original agreement and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

**Section 12.011** Recitals

All recitals are incorporated herein as material provisions of this Agreement.

### Article XIII.   Defined Terms

"Administrative Expenses" has the meaning ascribed thereto in Section 2.04(A).

"Agreement" or "Settlement Agreement" means this Settlement Agreement, including any and all Exhibits, Appendices, and Schedules attached hereto, as the same may be amended or modified from time to time in accordance with the terms hereof.

"ATE" means arterial thromboembolism, including but not limited to myocardial infarction (heart attack) and arterial thromboembolic stroke.

"BarrTeva" means, collectively, Barr Laboratories, Inc., Teva Pharmaceuticals USA, Inc., Barr Pharmaceuticals LLC, Barr Pharmaceuticals Inc., and Teva Pharmaceutical Industries Ltd.

"Bayer" means, collectively, Bayer AG and each of its subsidiaries, affiliates, and divisions who is a Defendant in any of the MDL Cases, any Other Federal Court Proceedings or any State Court Proceedings.

"BHCP" has the meaning ascribed thereto in the Preamble.

"Business Day" means any day other than a Saturday, a Sunday, or a day on which banking institutions in New York City, New York, are authorized or obligated by law or executive order to remain closed.

"California Coordinated Proceedings" has the meaning ascribed thereto in Recital A.

"Cap" has the meaning ascribed thereto in Section 2.01(C).

"Cholecystectomy" has the meaning ascribed thereto in Section 3.03(A)(6).

"Claimants" includes MDL Claimants, Federal Claimants and State Claimants who allege a Claim.

"Claim" and "Claims" have the meanings ascribed thereto in Recital B.

"Claims Administrator" means the Person appointed by BHCP and the NPC, initially BrownGreer PLC, to fulfill the functions of the "Claims Administrator" set forth in this Agreement (for so long as such Person or Persons continues to serve in such capacity).

"Claims Administrator Liaisons" has the meaning set forth in Section 5.02.

"Claim Form" means the Form contained in Appendix D that must be submitted as part of the Claim Package.

"Claim Package" means a Program Participant's request for an award, which includes the requisite documentation, as set forth in Section 3.03, submitted to the Claims Administrator for award consideration under the Program.

"Claim Package Deadline" has the meaning ascribed thereto in Section 3.01.

"CM/ECF" means the electronic case filing system utilized by the MDL Court.

"CMO" means a Case Management Order entered by the MDL Court, a Federal Court or a State Court.

"Cure Deadline" has the meaning ascribed thereto in Section 3.05(C).

"DCOCs" has the meaning ascribed thereto in Recital A.

"Declaration of Counsel" means a declaration in the form attached hereto as Appendix G certifying that the Eligible Claimant (or his or her personal representative) signed a retainer agreement with that attorney (or with his or her law form) prior to the Execution Date.

"Defendants" means any and all defendants in any of the MDL Cases, the Other Federal Court Proceedings, or the State Court Proceedings, and all retailers, wholesalers, marketers, or other entities that distributed, sold, or otherwise provided DCOCs to any DCOC user in any such cases, and includes all parents, subsidiaries, successors, predecessors, and affiliated companies of the foregoing, and the respective employees, agents, assigns, shareholders, officers, directors, servants, other representatives, underwriters, attorneys, and insurers of each of them.

"Derivative Claim" means a claim that derives from the Claim alleged by the Person whose gallbladder was injured.

"Effective Date" has the meaning ascribed thereto in Section 9.02.

"Eligible Claimant" has the meaning ascribed thereto in Section 1.05.

"Eligible MDL Claimant" means an Eligible Claimant with a case filed in the MDL as of the Filing Deadline.

"Eligible Claims" include, and are limited to, claims from Eligible Claimants who timely submit a completed Claim Package in accordance with the terms of the Agreement.

"Event Records" has the meaning ascribed thereto in Section 3.03(A)(6).

"Execution Date" has the meaning ascribed thereto in the Preamble.

"Expense Report" has the meaning ascribed thereto in Section 2.04(B).

"Federal Cases" means any Claims constituting part of the MDL or the Other Federal Court Proceedings (including any such Claim that has been removed from federal court and is awaiting transfer to the MDL Court) that have been filed as of the Filing Deadline.

"Federal Claimant" means a Person or Persons who have asserted a Claim in any Other Federal Court Proceedings.

"Federal Participant" means each Eligible Claimant with Claims constituting part of the Other Federal Court Proceedings who (or whose counsel) timely has filed a "Notice of Intent to Opt In Form."

"Federal Stipulation of Dismissal" has the meaning ascribed thereto in Section 3.03(A)(8)(b).

"Filing Deadline" means March 25, 2013 (i.e., the tenth (10th) day following the date on which the MDL Court posts on the CM/ECF system the Implementing CMO together with the Agreement).

"Final Award" has the meaning ascribed thereto in Section 3.06(A).

"Final Award Notice" has the meaning ascribed thereto in Section 3.06(D).

"Gallbladder Injury" means a gallbladder injury or gallbladder disease.

"Gallbladder Resolution Program" has the meaning ascribed thereto in Recital B.

"Governmental Payors" has the meaning ascribed thereto in Section 8.01(B).

"Implementing CMO" has the meaning ascribed thereto in Section 1.04(A).

"Internal Revenue Code" means the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder.

"Liability or Liabilities" means any and all debts, liabilities, covenants, promises, contracts, agreements and/or obligations of whatever kind, nature, description or basis, whether

fixed, contingent or otherwise, whether presently known or unknown, developed or undeveloped, discovered or undiscovered, foreseen or unforeseen, matured or unmatured, or accrued or not accrued.

"Lien" means any lien, claim, mortgage, hypothecation, encumbrance, assignment, subrogation right, reimbursement claim, right of indemnity, right to payment, third-party interest or adverse claim of any nature whatsoever, pledge, security interests or charges of any kind, in each case whether statutory or otherwise, including any of the foregoing relating to medical treatment or lost wages, based on any legal expenses, bills, or costs that have been or may be asserted by any health care provider, insurer, governmental entity, employer, any other Person operating under contract with any of the previously mentioned entities, or any other Person.

"Lien Resolution Firm" means an entity chosen by the NPC to assist Program Participants in dealing with Liens that are or may be asserted by Governmental Payors or Private Payors.

"LMI" has the meaning ascribed thereto in Section 3.03(B).

"MDL" has the meaning ascribed thereto in Recital A.

"MDL Cases" has the meaning ascribed thereto in Recital B.

"MDL Claimant" means a Person or Persons who have asserted a Claim in the MDL.

"MDL Court" has the meaning ascribed thereto in Recital A.

"MDL Participant" means each Eligible MDL Claimant who has filed a gallbladder claim, but not a Claim alleging a VTE or ATE Injury, and who has not filed timely a "Notice of Intent to Opt Out Form," and each Eligible MDL Claimant who has filed a Claim alleging a VTE or ATE Injury as well as a gallbladder claim and has filed timely a "Notice of Intent to Opt In Form."

"MDL Stipulation of Dismissal" has the meaning ascribed thereto in Section 3.03(A)(8)(a).

"Medical Records" has the meaning ascribed thereto in Section 3.03(A)(5).

"NPC" has the meaning ascribed thereto in the Preamble.

"New Jersey Coordinated Proceedings" has the meaning ascribed thereto in Recital A.

"Non-Participating Private Payor" has the meaning ascribed thereto in Section 8.01(C)(2)(c).

"Notice" has the meaning ascribed thereto in Section 3.05(B).

"Notice of Appeal" has the meaning ascribed thereto in Section 5.03(F).

"Opt In Deadline" has the meaning ascribed thereto in Section 1.04(A).

45

"Opt Out Deadline" has the meaning ascribed thereto in Section 1.04(A).

"Other Federal Court Proceedings" has the meaning ascribed thereto in Recital A.

"Party" means, individually, and "Parties" means, collectively, NPC, BHCP, Program Participants and their counsel.

"Person" means a natural person, corporation, limited liability company, other company, trust, joint venture, association, partnership, or other enterprise or entity, or the legal representative of any of the foregoing.

"Philadelphia Court of Common Pleas Coordinated Proceeding" has the meaning ascribed thereto in Recital A.

"PLRP" has the meaning ascribed thereto in Section 8.01(C)(2)(b).

"Pre-Cap Total" has the meaning ascribed thereto in Section 2.01(C)(1).

"Preliminary Award" has the meaning ascribed thereto in Section 3.06(A).

"Preliminary Award Notice" has the meaning ascribed thereto in Section 3.06(B).

"Prescription Records" has the meaning ascribed thereto in Section 3.03(A)(4).

"Private Lien Resolution Program" means a program administered by the Lien Resolution Firm to address private Liens.

"Private Payors" has the meaning ascribed thereto in Section 8.01(C).

"Program" has the meaning ascribed thereto in Recital B.

"Program Participant(s)" means, individually and collectively, each Eligible Claimant who participates in the Program, either by opting in, or by declining to opt out, as the circumstances require.

"QSF Administrator" refers to the Person who will function as the Qualified Settlement Fund Administrator.

"Qualified Settlement Fund" means the settlement fund established pursuant to Section 2.02 in which BHCP will deposit the Settlement Funds.

"Qualified Settlement Fund Agreement" means the agreement governing distributions of monies deposited into the Qualified Settlement Fund.

"Release" means the form of release of claims attached hereto as Appendix E-1 or E-2, as applicable.

"Released Claims" has the meaning ascribed thereto in the Release.

"Released Persons" has the meaning ascribed thereto in the Release.

"Second Notice" has the meaning ascribed thereto in Section 3.05(B).

"Settlement Funds" has the meaning ascribed thereto in Section 2.01(A).

"Special Master" has the meaning ascribed thereto in Section 4.01.

"State Cases" means any Claims constituting part of the State Court Proceedings that are pending as of the Filing Deadline.

"State Claimant" means a Person or Persons who have asserted a Claim in any State Court Proceedings.

"State Coordinating Courts" has the meaning ascribed thereto in Recital A.

"State Court Proceedings" has the meaning ascribed thereto in Recital A.

"State Participant" means each Eligible Claimant with Claims constituting part of the State Court Proceedings who (or whose counsel) timely has filed a "Notice of Intent to Opt In Form."

"State Stipulation of Dismissal" has the meaning ascribed thereto in Section 3.03(8)(c).

"Stipulation of Dismissal" means, as the context may require, an MDL Stipulation of Dismissal, a Federal Stipulation of Dismissal, or a State Stipulation of Dismissal.

"Supporting Documentation" means any and all of the various documents and information required pursuant to Section 3.03 of the Agreement.

"Tax Expenses" has the meaning ascribed thereto in Section 2.03(C).

"Taxes" has the meaning ascribed thereto in Section 2.03(C).

"Tier 1 Award" has the meaning ascribed thereto in Section 2.05(B)(1).

"Tier 2 Award" has the meaning ascribed thereto in Section 2.05(B)(2).

"Tier 1 Claim" has the meaning ascribed thereto in Section 2.05(A)(1).

"Tier 2 Claim" has the meaning ascribed thereto in Section 2.05(A)(2).

"VTE" means a venous thromboembolism, including deep vein thrombosis and pulmonary embolism.

"VTE or ATE Injury" means a Program Participant's documented VTE injury or ATE injury resulting from the use of DCOCs.

"Walk Away Right" has the meaning ascribed thereto in Section 9.02.

**Article XIV.**   Appendices

**Appendix A**          Implementing CMO

**Appendix B-1**        Notice of Intent to Opt Out Form

**Appendix B-2**        Notice of Intent to Opt In Form

**Appendix C**          Reserved

**Appendix D**          Claim Form

**Appendix E-1**        Release

**Appendix E-2**        Release Pertaining to Action with Derivative Claims

**Appendix F-1**        MDL Stipulation of Dismissal

**Appendix F-2**        State Stipulation of Dismissal (California)

**Appendix F-3**        State Stipulation of Dismissal (New Jersey)

**Appendix F-4**        State Stipulation of Dismissal (Pennsylvania)

**Appendix G**          Declaration of Counsel

IN WITNESS WHEREOF, NPC and BHCP have executed this Agreement effective as of the Execution Date.

**Bayer HealthCare Pharmaceuticals Inc.**

Michael M°Ronald

Michael McDonald, Secretary

March 15, 2013

Bayer HealthCare Pharmaceuticals Inc.

**Negotiating Plaintiffs' Counsel**

_____

Michael S. Burg

_____ __, 2013

Burg Simpson Eldredge Hersh & Jardine, P.C.
40 Inverness Drive East
Englewood, CO 80112
Phone: (303) 792-5595
Fax: (303) 708-0527
yazgbnotice@burgsimpson.com

_____

Michael A. London

_____ __, 2013

Douglas & London, P.C.
111 John Street
Suite 1400
New York, NY 10038
Phone: (212) 566-7500
Fax: (212) 566-7501
mlondon@douglasandlondon.com

IN WITNESS WHEREOF, NPC and BHCP have executed this Agreement effective as of the Execution Date.

**Bayer HealthCare Pharmaceuticals Inc.**

_____

_____ __, 2013
Bayer HealthCare Pharmaceuticals Inc.

**Negotiating Plaintiffs' Counsel**

_____

Michael S. Burg

_3 — 1 5_ __, 2013
Burg Simpson Eldredge Hersh & Jardine, P.C.
40 Inverness Drive East
Englewood, CO  80112
Phone:  (303) 792-5595
Fax:  (303) 708-0527
yazgbnotice@burgsimpson.com

_____

Michael A. London

_____ __, 2013
Douglas & London, P.C.
111 John Street
Suite 1400
New York, NY  10038
Phone:  (212) 566-7500
Fax:  (212) 566-7501
mlondon@douglasandlondon.com

IN WITNESS WHEREOF, NPC and BHCP have executed this Agreement effective as of the Execution Date.

        **Bayer HealthCare Pharmaceuticals Inc.**

        _____

        _____ _____ __, 2013
        Bayer HealthCare Pharmaceuticals Inc.

        **Negotiating Plaintiffs' Counsel**

        _____

Michael S. Burg

_____ __, 2013
Burg Simpson Eldredge Hersh & Jardine, P.C.
40 Inverness Drive East
Englewood, CO 80112
Phone: (303) 792-5595
Fax: (303) 708-0527
yazgbnotice@burgsimpson.com

Michael A. London

March 15, 2013
Douglas & London, P.C.
111 John Street
Suite 1400
New York, NY 10038
Phone: (212) 566-7500
Fax: (212) 566-7501
mlondon@douglasandlondon.com

49

_Richard D. Meadow_

Richard D. Meadow

3 | 15 | , 2013
The Lanier Law Firm
126 East 56th Street
New York, NY 10022
Phone: (212) 421-2800
Fax: (917) 546-0464
rdm@lanierlawfirm.com

_Daniel S. Robinson_

Daniel S. Robinson

3 / 15 , 2013
Robinson Calcagnie Robinson Shapiro & Davis, Inc.
19 Corporate Plaza Drive
Newport Beach, CA 92660
Phone: (949) 720-1288
Fax: (949) 720-1292
drobinson@rcrlaw.net

_Michael M. Weinkowitz_

Michael M. Weinkowitz

3/15/ , 2013
Levin Fishbein Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
mweinkowitz@lfsblaw.com

# Appendix A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| | ) | |
| IN RE: YASMIN AND YAZ (DROSPIRENONE) | ) | 3:09-md-02100-DRH-PMF |
| MARKETING, SALES PRACTICES AND PRODUCTS | ) | |
| LIABILITY LITIGATION | ) | MDL No. 2100 |
| | ) | |

**This Document Relates to:**

**ALL CASES**

**[PROPOSED] ORDER #__**
**CASE MANAGEMENT**
**(Settlement Agreement and Deadlines – Gallbladder Injuries)**

This Court is advised that Bayer HealthCare Pharmaceuticals Inc. ("BHCP") and  a

committee of plaintiffs' counsel  appointed by this Court in cooperation with the state court

Judges in the Pennsylvania, New Jersey and California coordinated proceedings ("Negotiating

Plaintiffs Counsel" or "NPC") have negotiated a Settlement Agreement ("Agreement") to

resolve claims involving gallbladder injuries. The Agreement is attached as Exhibit A to this

Order.  The Agreement establishes a program (the "Gallbladder Resolution Program" or

"Program") for the settlement of cases filed in this MDL No. 2100, cases pending in other

federal courts but not yet transferred into MDL No. 2100 ("Other Federal Court Cases"), and

cases filed in the California Coordinated Proceedings, the New Jersey Coordinated Proceedings,

the Philadelphia Court of Common Pleas Coordinated Proceedings as well as any other state

courts ("State Cases"), in which plaintiff(s) alleges gallbladder disease and/or gallbladder

injuries resulting from the use of drospirenone-containing oral contraceptives manufactured by

Bayer or manufactured or marketed by BarrTeva, as defined in the Agreement ("Gallbladder

Plaintiffs").

## I.     AUTHORITY OF COURT TO OVERSEE SETTLEMENT

This Court has authority to preside over and manage various aspects of the Agreement and the Gallbladder Resolution Program, including, but not limited to, the entry of Orders establishing time frames for the completion of acts defined in the Agreement.  Fed. R. Civ. P. 16(a)(5), (d); *In re Vioxx Prods. Liab. Litig.*, 650 F. Supp. 2d 549 (E.D. La. 2009); *In re Propulsid Prods. Liab. Litig.*, 2004 WL 305816 (E.D. La. 2004).  The instructions herein are to be construed as the orders of this Court.

## II.    MDL CASES

All Gallbladder Plaintiffs with cases pending in  MDL No. 2100 ("MDL Gallbladder Plaintiffs") that have been filed and served on Defendants as of the "Filing Deadline," set forth in this Order, shall be given notice of this Order and of the Agreement executed by BHCP and the NPC.  The Clerk of Court is hereby directed to file this Order in each individual case pending in this MDL (in addition to filing the Order on the general docket for this MDL applicable to all cases).

For ease of administration of the Gallbladder Resolution Program and so that no Gallbladder Plaintiff is inadvertently excluded from the Settlement Program, **all MDL Gallbladder Plaintiffs, other than those alleging a venous or arterial thromboembolism in addition to a gallbladder injury or disease, are automatically enrolled in, and bound by the terms of, the Gallbladder Resolution Program unless such Plaintiff submits a "Notice of Intent to Opt Out Form," attached as Exhibit B (Appendix B-1) to this Order and available at http://www.ilsd.uscourts.gov/mdl/mdl2100.aspx, by the "Opt-Out Deadline" set forth in this Order (and as may be extended as applicable under the terms of the Agreement). MDL Gallbladder Plaintiffs who do not timely submit a "Notice of Intent to Opt Out Form" shall submit a complete Claim Package, as detailed in the Agreement, by the Claim**

**Package Deadline, extended as may be appropriate to the Cure Deadline, both set forth in this Order, to be eligible for an award under the Gallbladder Resolution Program.**

The claims of MDL Gallbladder Plaintiffs, other than MDL Gallbladder Plaintiffs alleging a venous or arterial thromboembolism in addition to a gallbladder injury or disease, who do not submit a "Notice of Intent to Opt Out Form" and who do not timely submit a complete Claim Package will not be eligible to receive any compensation under the Program and will be subject to a motion by Defendant for dismissal with prejudice following the Cure Deadline as set forth in the Agreement.

MDL Gallbladder Plaintiffs who allege venous or arterial thromboembolism in addition to a gallbladder injury or disease are permitted to enroll in, and be bound by the terms of, the Gallbladder Resolution Program but these plaintiffs are not automatically enrolled in the Program and must take underlined affirmative action to participate by submitting a "Notice of Intent to Opt In Form," attached as Exhibit C (Appendix B-2) to this Order and available at http://www.ilsd.uscourts.gov/mdl/mdl2100.aspx, by the "Opt-In Deadline" set forth in this Order (and extended as applicable under the terms of the Agreement).  Under the terms of the Agreement, by enrolling in the Program, any plaintiff will be required to submit a completed Claims Package, as detailed in the Agreement, to be eligible for an award under the Gallbladder Resolution Program, which will include a Release, releasing all claims against the defendants, including their claims alleging an arterial or venous thromboembolism injury.

## III.    OTHER FEDERAL COURT CASES AND STATE CASES

Gallbladder Plaintiffs with claims pending in Other Federal Court Cases ("Other Federal Court Gallbladder Plaintiffs"), as well as Gallbladder Plaintiffs with claims pending in State Cases ("State Court Gallbladder Plaintiffs"), are permitted to enroll in, and be bound by the terms of, the Gallbladder Resolution Program.  Other Federal Court Gallbladder Plaintiffs and

State Court Gallbladder Plaintiffs are <u>not</u> automatically enrolled in the Gallbladder Resolution Program, but rather must take affirmative action to participate.  Other Federal Court Gallbladder Plaintiffs and State Court Gallbladder Plaintiffs who intend to participate in the Gallbladder Resolution Program must submit a "Notice of Intent to Opt In Form," attached as Exhibit C (Appendix B-2) to this Order and available at http://www.ilsd.uscourts.gov/mdl/mdl2100.aspx, by the "Opt-In Deadline" set forth in this Order (and extended as applicable under the terms of the Agreement).  Other Federal Court Gallbladder Plaintiffs and State Court Gallbladder Plaintiffs who submit a "Notice of Intent to Opt In Form" shall submit a complete Claim Package, as detailed in the Agreement, by the Claim Package Deadline, extended as appropriate to the Cure Deadline, to be eligible for an award under the Gallbladder Resolution Program.

The claims of Other Federal Court Gallbladder Plaintiffs and State Court Gallbladder Plaintiffs who submit a "Notice of Intent to Opt In Form," but who do not timely submit a complete Claim Package, will not be eligible to receive any compensation under the Program and will be subject to a motion by Defendant for dismissal with prejudice following the Cure Deadline as set forth in the Agreement.  State Court judges shall retain jurisdiction over State Cases, and exclusive jurisdiction over the termination of Plaintiff rights to sue Defendants in those cases.

## IV.   SETTLEMENT PROGRAM DEADLINES

| **March 25, 2013 (by 11:59 p.m. C.T.) (the "Filing Deadline")** | Date by which claimants must file and serve new cases alleging a gallbladder injury or gallbladder disease, subject to the requirements of Sections VI and VII below, in order to be eligible for participation in the Gallbladder Resolution Program. |
|---|---|

| | |
|---|---|
| **March 15, 2013 to 11:59 p.m. C.T. on April 29, 2013 (the "Opt-Out Deadline")** | Window of time for individual MDL Gallbladder Plaintiffs (other than those who allege a venous or arterial thromboembolism injury) to opt out of the Gallbladder Resolution Program by submitting the "Notice of Intent to Opt Out Form."<br><br>A one-time extension of thirty (30) days to the Opt-Out Deadline may be sought from the Claims Administrator in accordance with the terms of the Agreement. |
| **March 15, 2013 to 11:59 p.m. C.T. on April 29, 2013 (the "Opt-In Deadline")** | Window of time in which MDL Gallbladder Plaintiffs who also allege a venous or arterial thromboembolism injury, Other Federal Court Gallbladder Plaintiffs, and State Court Gallbladder Plaintiffs may elect to participate in the Gallbladder Resolution Program by submitting the "Notice of Intent to Opt In Form."<br><br>An extension of thirty (30) days to the Opt-In Deadline may be sought from the Claims Administrator in accordance with the terms of the Agreement.  In addition to such thirty (30) day extension for individual plaintiffs seeking such an extension, the Claims Administrator, in the Claims Administrator's discretion, may allow an additional twenty (20) days for plaintiffs to opt in to the Gallbladder Resolution Program under the terms of the Agreement. |
| **11:59 p.m. C.T. on the 30th day following the last day of the final extension of the Opt In Deadline for opting into the Gallbladder Resolution Program (the "Effective Date")** | Date by which BHCP may exercise its termination right under the Agreement.  If BHCP's termination right under the Agreement expires without previously having been exercised, this date shall become the Effective Date of the Agreement. |
| **Ninety (90) days from the Effective Date (the "Claim Package Deadline")** | Window of time in which Gallbladder Resolution Program participants may submit Claim Packages seeking an award under the Gallbladder Resolution Program. |
| **Thirty (30) days after Notice sent by Claims Administrator notifying of Claims Package deficiencies (the "Cure Deadline")** | Date by which a Gallbladder Resolution Program participant must cure deficiencies in her Claims Package.  A claimant may seek an extension of an additional thirty (30) days from the Claims Administrator in accordance with the terms of the Agreement. |

## V.      FORM SUBMISSION

"Notice of Intent to Opt Out Forms" and "Notice of Intent to Opt In Forms" must be

submitted in one of the following ways:

1.      Online at www.yazofficialsettlement.com, in accordance with instructions
        provided therein by the Claims Administrator;

                -or-

2.      By email to all of the following:

        (a)   OptInOptOutNotice@yazofficialsettlement.com (Claims Administrator)
        (b)   OptInOptOutNotice@shb.com (BHCP's counsel)
        (c)   YazGBClaimNotice@uselaws.com (NPC);

                -or-

3.      By United States Mail or other carrier, return receipt requested, to all of the
        following:

| Claims Administrator: | BHCP's counsel: | NPC: |
|---|---|---|
| Yaz Settlement Claims Administrator BrownGreer PLC P.O. Box 85006 Richmond, VA 23285-5006 | Jeff Fields Shook, Hardy & Bacon L.L.P. 2555 Grand Blvd. Kansas City, MO 64108-2613 | Roger C. Denton Schlichter, Bogard & Denton, LLP 100 South Fourth St., Ste 900 St. Louis, MO 63102 |

## VI.     SERVICE OF PROCESS AND ATTORNEY DECLARATIONS FOR NEW CASES FILED BETWEEN THE EXECUTION DATE OF THE AGREEMENT AND THE FILING DEADLINE

For all new cases alleging a gallbladder injury or gallbladder disease filed in this MDL

No. 2100, or filed in any jurisdiction and ultimately transferred or removed to this MDL, and

served on Defendant as set forth below, between March 15, 2013 (the Execution Date of the

Agreement) and 11:59 p.m. on March 25, 2013 (the Filing Deadline), unless such Plaintiff

submits a "Notice of Intent to Opt Out Form" as detailed above, such Complaints must be

accompanied by a declaration, in a form substantially similar to the form attached as Exhibit D

(Appendix G) to this Order and available at http://www.ilsd.uscourts.gov/mdl/mdl2100.aspx,

from the attorney or attorneys filing the Complaint, affirming that such Plaintiff had signed a

retainer agreement with that attorney or his or her law firm prior to March 15, 2013.

In order to be eligible for participation in the Gallbladder Resolution Program, service

upon BHCP of such new Complaints alleging a gallbladder injury or gallbladder disease filed in

this MDL No. 2100 between March 15, 2013 and the Filing Deadline, or filed in any jurisdiction

between March 15, 2013 and the Filing Deadline and ultimately transferred or removed to this

MDL, must be made on or before the Filing Deadline by one of the following methods:

1.  By email to ServeBayer@shb.com; or

2.  By United States Mail or other carrier, post-marked on or before the Notice

    Deadline as set forth above, return receipt requested, to the following:

    > Douglas Beck
    > Shook, Hardy & Bacon L.L.P.
    > 2555 Grand Blvd.
    > Kansas City, Missouri 64108-2613

For purposes of participation in the Gallbladder Resolution Program no other service is

necessary, and Plaintiffs need not name, and may not serve, any entity other than BHCP in

accordance with the procedures specified in this Section.

## VII.    SERVICE OF COMPLAINTS FILED BEFORE THE EXECUTION DATE OF THE AGREEMENT BUT NOT SERVED BY THE DATE OF THIS ORDER

So that the parties, and this Court, can have an accurate census of the cases in this

litigation, if a case alleging gallbladder disease and/or gallbladder injury, either alone or in

combination with another injury (unless that injury is an arterial thromboembolism or venous

thromboembolism), has been filed in this Court and has not yet been served on the Defendant

("Filed But Unserved Cases"), Counsel of Record for that case shall serve the case on BHCP

within ten (10) days of the entry of this Order (by March 25, 2013) in accordance with the

service procedures set forth above in Section VI.   All Filed But Unserved Cases shall be subject

to a motion to dismiss with prejudice for failure to comply with this Order if not timely served,

and will thereupon be dismissed with prejudice unless counsel can demonstrate good reason for

noncompliance with this Order.  For cases alleging all other injuries, the existing service of

process procedures specified in CMO 9, as amended, shall apply.

## VIII.   APPOINTMENT OF SPECIAL MASTER

The Court, by this Order, appoints Professor Stephen Saltzburg as Special Master to hear

motions to dismiss claims that fail to comply with the terms of the Agreement, and to

recommend to this Court rulings on such motions, as specified in the Agreement.


Date:  _____            _____
                                          Honorable David R. Herndon
                                          Chief Judge, United States District Court

# Appendix B-1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: YASMIN AND YAZ (DROSPIRENONE) MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | 3:09-md-02100-DRH-PMF<br><br>MDL No. 2100 |

# <u>NOTICE OF INTENT TO OPT OUT FORM</u>

**ALL MDL PLAINTIFFS WITH PERSONAL INJURY CLAIMS ALLEGING GALLBLADDER DISEASE AND/OR GALLBLADDER INJURIES, EITHER ALONE OR IN COMBINATION WITH ANOTHER INJURY, FILED AND SERVED ON OR BEFORE MARCH 25, 2013 ARE AUTOMATICALLY ENROLLED IN THE MDL GALLBLADDER RESOLUTION PROGRAM (the "Program") UNLESS: (1) THE CASE ALLEGES A GALLBLADDER INJURY AND A VENOUS THROMBOEMBOLISM (INCLUDING, BUT NOT LIMITED TO, DEEP VEIN THROMBOSIS OR PULMONARY EMBOLISM) OR ARTERIAL THROMBOEMBOLISM (INCLUDING, BUT NOT LIMITED TO, HEART ATTACK OR ARTERIAL THROMBOEMBOLIC STROKE) INJURY, PENDING IN MDL DOCKET NO. 2100; OR (2) THE PLAINTIFF SUBMITS THIS FORM OPTING OUT OF THE PROGRAM.**

**IF YOU DO <u>NOT</u> WISH TO PARTICIPATE IN THE GALLBLADDER RESOLUTION PROGRAM, YOU <u>MUST</u> SUBMIT THIS FORM ON OR BEFORE <u>11:59 p.m. C.T. ON APRIL 29, 2013</u> (UNLESS EXTENDED TO A LATER DATE PURSUANT TO THE TERMS OF THE SETTLEMENT AGREEMENT) AS FOLLOWS:**

    (1)    **<u>Preferred option for submission</u>**:  Online at www.yazofficialsettlement.com, in accordance with instructions provided therein by the Claims Administrator.

        **-OR-**

    (2)    By email **to all of the following**:

        (a)    OptInOptOutNotice@yazofficialsettlement.com (Claims Administrator)
        (b)    OptInOptOutNotice@shb.com (BHCP's counsel)
        (c)    YazGBClaimNotice@uselaws.com (NPC);

        **-OR-**

    (3)    By United States Mail or other carrier, return receipt requested, **to all of the following**:

| Claims Administrator: | BHCP's counsel: | NPC: |
|---|---|---|
| Yaz Settlement Claims Administrator BrownGreer PLC P.O. Box 85006 Richmond, VA 23285-5006 | Jeff Fields Shook, Hardy & Bacon L.L.P. 2555 Grand Blvd. Kansas City, MO 64108-2613 | Roger C. Denton Schlichter, Bogard & Denton, LLP 100 South Fourth St., Ste 900 St. Louis, MO 63102 |

By timely submitting this form, you acknowledge and agree that you will not be entitled to seek an award under the Gallbladder Resolution Program.  Failure to timely submit this form means that you will automatically be enrolled in the Program (unless your case alleges a gallbladder injury and a venous thromboembolism or arterial thromboembolism injury), although you will not be eligible for an award unless you also timely submit a completed Claim Package pursuant to the Program. By checking the box below and executing this form, you acknowledge that you have been fully advised of your rights under the Settlement Agreement and elect to opt out of the Program.

☐  **I elect to opt out of the Gallbladder Resolution Program.**

Print Name:          _____
Date:                _____
Signature:           _____
Case No.:            _____
Attorney's Name:     _____
Firm Name:           _____
Attorney's Address:  _____
Attorney's Email:    _____
Attorney's Telephone Number: _____

Appendix B-2

# <u>NOTICE OF INTENT TO OPT IN FORM</u>

**THIS FORM APPLIES TO ALL PLAINTIFFS WITH PERSONAL INJURY CLAIMS, FILED AND SERVED ON OR BEFORE MARCH 25, 2013, ALLEGING GALLBLADDER DISEASE AND/OR GALLBLADDER INJURIES <u>PENDING IN STATE AND FEDERAL COURTS</u>, OTHER THAN CASES PENDING IN MDL DOCKET NO. 2100 ("MDL"). THIS FORM ALSO APPLIES TO ALL PLAINTIFFS WITH CASES, FILED AND SERVED ON OR BEFORE MARCH 25, 2013, PENDING IN MDL NO. 2100 WHO ALLEGE A VENOUS THROMBOEMBOLISM (INCLUDING, BUT NOT LIMITED TO, DEEP VEIN THROMBOSIS OR PULMONARY EMBOLISM) OR ARTERIAL THROMBOEMBOLISM (INCLUDING, BUT NOT LIMITED TO, HEART ATTACK OR ARTERIAL THROMBOEMBOLIC STROKE) INJURY IN COMBINATION WITH A GALLBLADDER INJURY.**

**IF YOU WISH TO PARTICIPATE IN THE GALLBLADDER RESOLUTION PROGRAM  (the "Program") AND TO BE POTENTIALLY ELIGIBLE FOR AN AWARD UNDER THE PROGRAM, YOU <u>MUST</u> SUBMIT THIS FORM ON OR BEFORE <u>11:59 p.m. C.T. ON APRIL 29, 2013</u> (UNLESS EXTENDED TO A LATER DATE PURSUANT TO THE TERMS OF THE SETTLEMENT AGREEMENT) AS FOLLOWS:**

    (1)   **Preferred option for submission**:  Online at www.yazofficialsettlement.com, in accordance with instructions provided therein by the Claims Administrator.

        **-OR-**

    (2)   By email **to all of the following**:

        (a)   OptInOptOutNotice@yazofficialsettlement.com (Claims Administrator)
        (b)   OptInOptOutNotice@shb.com (BHCP's counsel)
        (c)   YazGBClaimNotice@uselaws.com (NPC);

        **-OR-**

    (3)   By United States Mail or other carrier, return receipt requested, **to all of the following**:

| Claims Administrator: | BHCP's counsel: | NPC: |
|---|---|---|
| Yaz Settlement Claims Administrator | Jeff Fields | Roger C. Denton |
| BrownGreer PLC | Shook, Hardy & Bacon L.L.P. | Schlichter, Bogard & Denton, LLP |
| P.O. Box 85006 | 2555 Grand Blvd. | 100 South Fourth St., Ste 900 |
| Richmond, VA 23285-5006 | Kansas City, MO 64108-2613 | St. Louis, MO 63102 |

**<u>BY OPTING IN</u>, PLAINTIFFS WITH OTHER INJURIES IN ADDITION TO GALLBLADDER DISEASE AND/OR GALLBLADDER INJURY UNDERSTAND THAT THEY <u>WILL HAVE TO PROVIDE TO DEFENDANTS A RELEASE OF ALL CLAIMS, INCLUDING THEIR NON-GALLBLADDER INJURIES.</u>**

By timely submitting this form, you agree to be bound by the terms of the Settlement Agreement and the jurisdiction of the Special Master and the MDL Court (or the state court in which the case is pending, should the MDL Court lack subject matter jurisdiction) with regard to all matters pertaining to the Settlement Agreement and the Program contained therein. You acknowledge that you will not be eligible for an award unless you also timely submit a completed Claim Package pursuant to the Program.  You agree that the Special Master will hear motions to dismiss claims that fail to comply with the Settlement Agreement and make recommendations to the court in which your case is pending.  You also agree that appeals of determinations by the claims administrator as to whether a Claimant is entitled to payment and, if so, the amount of that payment, will be resolved by the Special Master and that the Special Master's decisions will be binding on the parties.  You acknowledge that the Special Master's rulings on these appeals are separate from recommendations he makes as a Special Master on appointment from the MDL Court or other court.  By checking the box below and executing this form, you acknowledge that you have been fully advised of your rights under the Settlement Agreement and elect to participate in the Program.

☐  **I elect to participate in the Gallbladder Resolution Program.**

Print Name: _____
Date: _____
Signature: _____
Case No.: _____
Attorney's Name: _____
Firm Name: _____
Attorney's Address: _____
Attorney's Email: _____
Attorney's Telephone Number: _____

# Appendix C
## (reserved)

# Appendix D

Claimant: _____
(name)

## CLAIM FORM

The Claim Package, including a completed copy of this Claim Form, must be submitted no later than the Claim Package Deadline on behalf of all Claimants, including unrepresented (*pro se*) Claimants, in the Gallbladder Resolution Program (the "Program") outlined in the Settlement Agreement of March 15, 2013 (the "Agreement").

Counsel for Claimants, and all *pro se* Claimants, must complete Sections I, II, III, IV, V, and VI of this Claim Form.

## I. CASE INFORMATION

**A.** Information Regarding Claimant:

_____
Name

_____
Address

_____
Telephone Number

_____
Social Security Number

_____
Date of Birth

_____
Any other names by which Claimant has been known, including but not limited to maiden name

B. Information Regarding Primary Attorney:

_____
Name of Attorney

_____
Firm Name

_____
City, State and Zip Code

_____
Telephone Number

_____
Telecopy Number

_____
E-mail Address

C.      Information Regarding Case:

_____
Court/Jurisdiction

_____
Case Caption

_____
Case No.

**II.   PERSONAL REPRESENTATIVE INFORMATION FOR DECEASED OR INCAPACITATED CLAIMANTS**

A.      Does the Claimant have a representative? _____Yes _____No
(If Yes, complete this Section II, if No, Skip to Section III.)

B.      Relationship to Claimant: _____

C.      Last Name: _____

First Name: _____

Middle Name or Initial: _____

D.      Address: _____

2

E.   Telephone Number: _____

F.

Social Security Number: _____

G.   Date of Birth: _____

H.   Date of Death of Claimant (if          Do you claim Product caused the death:
applicable): _____   ____Yes ____ No

## III.  CLAIM INFORMATION

Check the injury Claimant is claiming from Claimant's use of DCOCs and
indicate the date(s) of occurrence:

|  Injury Type | Date |
|---|---|
| ___  Surgery to remove gallbladder (cholecystectomy) according to medical records included in this Claim Package (Tier 1 Claim) | _____ |
| ___  Diagnosis of a gallbladder injury according to medical records included in this Claim Package, but no surgery to remove gallbladder (cholecystectomy) was performed (Tier 2 Claim) | _____ |

## IV.    CLAIM PACKAGE MATERIALS

Attach all Claim Package materials as required by Section 3.03 of the Agreement.  Indicate that you have included the following in your submission:

_____    A completed copy of this Claim Form.

_____    An executed copy of the Release(s) contained in Appendix E-1 or Appendix E-2 to the Agreement.

_____    The Prescription Records specified in Section 3.03(A)(4) of the Agreement.

_____    The Medical Records specified in Section 3.03(A)(5) of the Agreement.

_____    The Event Records specified in Section 3.03(A)(6) of the Agreement, if applicable.

_____    A Stipulation of Dismissal that meets the requirements of Section 3.03(A)(8) of the Agreement.

_____    Wire instructions for use by the QSF Administrator as specified in Section 3.03(A)(9) of the Agreement.

## V.    CLAIMANT'S ELIGIBILITY FOR MEDICARE

A.    Pursuant to the requirements of Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, codified at 42 U.S.C. 1395y(b)(7) and (b)(8), Claimant and Counsel for Claimant represent and warrant that the following information provided in this form is complete and accurate:  (1) the Claimant's Social Security Number; (2) the Claimant's full legal name; and (3) the Claimant's date of birth.

B.    Certification Relating to Medicare Eligibility:

To the best of her knowledge, Claimant certifies, by indicating below, that she

_____    IS eligible to receive Medicare benefits.
_____    IS NOT eligible to receive Medicare benefits.

**VI.     CLAIMANT'S CERTIFICATION REGARDING BANKRUPTCY**

Claimant certifies, by indicating below, that she

\_\_\_\_\_        IS a party in a bankruptcy action currently pending in
which she is seeking bankruptcy protection.

\_\_\_\_\_        IS NOT a party in a bankruptcy action currently pending
in which she is seeking bankruptcy protection.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Dated: _____                    _____
[Program Participant's Attorney Name]
[Law Firm Name]
[Address]
[City/Town, State, Zip Code]
[Area Cod/Phone Number]
[Area Code/Fax Number]
[Email address]

## CERTIFICATION AND AUTHORIZATION

By submitting this Claim Form, I agree to be bound by the terms of the Agreement and the jurisdiction of the Special Master, and the court presiding over MDL No. 2100, the federal multi-district litigation venued in the United States District Court for the Southern District of Illinois (the "MDL Court"), or the state court in which the case is pending, should the MDL Court lack subject matter jurisdiction, with regard to all matters pertaining to the Agreement and the Program contained therein. I agree that the Special Master will hear motions to dismiss claims that fail to comply with the Agreement and make recommendations to the court in which my case is pending. I also agree that appeals of determinations by the Claims Administrator as to whether a Claimant is entitled to payment and, if so, the amount of that payment, will be resolved by the Special Master, and that the Special Master's decisions will be binding on the parties. I acknowledge that the Special Master's rulings on these appeals are separate from recommendations he makes as a Special Master on appointment from the MDL Court or other court.  By executing this form, I acknowledge that I have been fully advised of my rights under the Agreement and elect to participate in the Program.

I declare under penalty of perjury subject to 28 U.S.C. § 1746 that all of the information provided in this Claim Form is true and correct to the best of my knowledge, information and belief.

_____       _____       _____

Signature                                        Print Name                                  Date

6

Appendix E-1

## RELEASE, INDEMNITY, AND ASSIGNMENT

THIS RELEASE, INDEMNITY, and ASSIGNMENT ("Release") is made and entered into by Claimant _____ ("Claimant") on the date signed below.

## I.    RECITALS

WHEREAS Claimant has asserted a claim against Bayer HealthCare Pharmaceuticals Inc. ("BHCP"), other Bayer entities (as defined below), Barr Laboratories, Inc., other Barr Teva entities, and other defendants (collectively, "Defendants"), relating to Claimant's alleged use of a drosperinone-containing oral contraceptive ("DCOC" or "DCOCs").

WHEREAS Defendants have denied and continue to deny any liability based on Claimant's claims, allegations and assertions; and

WHEREAS the parties have agreed to resolve fully all claims, differences and controversies by and between Claimant and BHCP and the other Released Persons (as defined below) that exist, have existed or may exist in the future and that arise from, involve or relate to Claimant's alleged use of a DCOC.

## II.    RELEASE

**A.    Complete and General Release, Covenant Not To Sue and Assignment.**

1.    **Claimants**  Claimant, individually and for the Claimant's heirs, beneficiaries, agents, estate, executors, administrators, personal representatives, successors and assigns, hereby release and forever discharge, and agree and covenant not to sue the Released Persons, as defined below, of and from all Settled Claims, as defined below.

2.    **Released Persons.**  The term "Released Persons" as used herein shall mean:

(a)    Bayer AG and each of its subsidiaries, affiliates, and divisions, including but not limited to, Bayer Corporation, Bayer, Inc., Bayer HealthCare LLC, Bayer HealthCare Pharmaceuticals Inc., Bayer Pharmaceutical Corporation, Bayer Schering Pharma AG, Bayer Healthcare AG, and Bayer Pharmaceuticals (collectively "Bayer");

(b)    All entities related to or alleged to be related to Bayer regarding DCOCs, including, but not limited to, Berlex, Inc., Berlex Laboratories, Inc., Berlex International Laboratories, Inc.;

(c)    Barr Laboratories, Inc., Barr Pharmaceuticals, LLC (f/k/a Barr Pharmaceuticals, Inc.), Teva Pharmaceuticals USA, Inc., and Teva Pharmaceuticals Industries Ltd (collectively, "Barr Teva");

(d)     Any and all suppliers of materials, components, and services used in the manufacture of DCOCs, including the labeling and packaging thereof;

(e)     All distributors of DCOCs, including wholesale distributors, retail distributors, private label distributors, pharmacists, pharmacies, hospitals, and clinics, with respect to their distribution of DCOCs, and sale representatives;

(f)     All health care providers, whether entities or individuals, including without limitation physicians, pharmacists, pharmacies, hospitals, and medical centers who provided treatment in any way related to Claimant's alleged use of a DCOC, all health care providers who prescribed a DCOC for Claimant, all pharmacists and pharmacies who dispensed a DCOC to Claimant, except that health care providers are not Released Persons with respect to claims against a health care provider for alleged independent acts of medical malpractice first arising after the date signed below;

(g)     Any other person against whom Claimant could attempt to assert any claim, liability, or right to payment arising out of or related in any way to Claimant's alleged use of a DCOC, whether as a joint tortfeasor or otherwise, under any theory of law or equity;

(h)     Any attorney, law firm, and its employees representing Bayer or other Released Persons in regard to Claimant's alleged use of a DCOC and Claimant's asserted claims against Bayer or other Released Persons;

(i)     Any insurers, excess and umbrella insurance carriers, reinsurance carriers, any additional individual or entity which is an insured on any policy of insurance insuring any Released Person and anyone acting on their joint or several behalf in relation to any Settled Claim, as defined below; and

(j)     Any past, present or future officer, director, shareholder, subsidiary, employee, partner, trustee, representative, agent, servant, attorney, predecessor, successor, or assignee of any of the above.

3.     **Settled Claims.**  The term "Settled Claims" shall mean any and all claims, causes of action, demands, damages, costs, expenses, liabilities or other losses, whether in law or in equity, including assigned claims, whether known or unknown, asserted or unasserted, regardless of the legal theory, existing now or arising in the future, arising out of or relating to the purchase, use, manufacture, sale, design, distribution, promotion, marketing, clinical investigation, testing, administration, regulatory approval, and/or labeling of a DCOC, alone or in combination with any other substance, or any other transaction between Claimant and Released Persons relating to Claimant's alleged use of a DCOC.  The term "Settled Claims" also includes any claims, causes of action, demands, damages,

costs, expenses, liabilities or other losses, whether in law or in equity, including assigned claims, whether known or unknown, asserted or unasserted, regardless of the legal theory, existing now or arising in the future, arising directly or indirectly out of or in any way related to, this Release and the events surrounding its negotiation and execution. These "Settled Claims" also include any cause of action that Claimant may attempt to assert against any attorney, law firm, or its employees as it relates to their representation of Bayer and/or other Released Person in connection with this settlement or the defense of Bayer and/or other Released Persons as that defense relates to DCOC claims asserted by any plaintiff or claimant, including Claimant. These "Settled Claims" include, without limitation and by way of example, all DCOC related claims for damages or remedies of whatever kind or character, known or unknown, that are now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision, or in any other manner, for:

(a)    Personal injury and/or bodily injury, damage, death, fear of disease or injury, including without limitation reduced future medical treatment options, mental or physical pain or suffering, emotional or mental harm, or loss of enjoyment of life;

(b)    Compensatory damages, punitive, exemplary, statutory and other multiple damages or penalties of any kind;

(c)    Loss of wages, income, earnings, and earning capacity, medical expenses, medical benefits, including rights to future Medicare benefits, doctor, hospital, nursing, and drug bills;

(d)    Loss of support, services, consortium, companionship, society or affection, or damage to familial relations, by spouses, former spouses, parents, children, other relatives or "significant others" of Claimants;

(e)    Consumer fraud, refunds, unfair business practices, deceptive trade practices, unfair and deceptive acts and practices, fraudulent inducement, and other similar claims whether arising under statute, regulation, or judicial decision;

(f)    Wrongful death and survival actions;

(g)    Medical screening and monitoring, injunctive and declaratory relief;

(h)    Economic or business losses or disgorgement of profit; and

(i)    Prejudgment or post-judgment interest.

3

The term "Settled Claims" does not include independent claims of professional malpractice, first arising after the date signed below, against any health care providers.

4.    **Applicability.**   The releases herein are specifically intended to operate and be applicable even if it is alleged, charged, or proven that some or all of the claims or damages released are caused in whole or in part by the negligence, negligence per se, gross negligence, breach of warranty, violation of statute or common law, defective product, malice, or conduct of any type by any of the Released Persons, Claimant, or anyone else.

5.    **Assignment.**   Any and all claims or damages directly or indirectly arising from or in connection with any of the allegations made or that might have been made arising from or relating to Claimant's alleged use of a DCOC and any other claims which were or could have been raised are hereby assigned in full to the Released Persons.

B.    **Unknown Facts.**   Claimant expressly understands and agrees that this Release is intended to and does cover any and all losses, injuries, damages and claims of every kind and nature whatsoever, whether direct or indirect, known or unknown, and suspected or unsuspected.  Claimant acknowledge that Claimant may hereafter discover facts different from, or in addition to, those which they now know to be, or believe to be, true with respect to Claimant's alleged injuries, losses and claims. Claimant acknowledges that Claimant may learn of additional facts as they relate to DCOCs and the Released Persons' activities as they relate to DCOCs.  Claimant agrees that this Release, and the specific releases contained herein, shall be and remain effective in all respects, notwithstanding such different or additional facts and the subsequent discovery thereof.

C.    **Scope of Release.**   This Release is intended by Claimant to include any liability whatsoever:

1.    Which arises directly or indirectly out of or is in any manner related to any alleged defect in a DCOC or the purchase, use, manufacture, sale, design, distribution, promotion, marketing, clinical investigation, testing, administration, regulatory approval or labeling of a DCOC;

2.    Which arises directly or indirectly from the actions of Released Persons or any other person involved in the manufacture, sale, design, distribution, promotion, marketing, clinical investigation, testing, administration, regulatory approval or labeling of a DCOC and from the actions of any person affiliated with or representing the Released Persons;

3.    Which arises directly or indirectly out of or is in any manner related to any alleged representations, promises, statements, warranties (express or implied) or

guarantees given and made by any of the Released Persons or anyone affiliated with any Released Person in connection with a DCOC;

4.     Which arises directly or indirectly out of or is in any manner related to Claimant's alleged use of a DCOC, and any injuries or damages resulting directly or indirectly therefrom;

5.     Which arises directly or indirectly out of or is in any manner related to Claimant's alleged use of a DCOC, or any injuries and losses to Claimant, without limitation, including those injuries or losses to Claimant that may hereafter develop or become known;

6.     Which arises directly or indirectly out of or is in any manner related to any of the matters, occurrences or transactions which could have been asserted in connection with Claimant's alleged use of a DCOC, including, without limitation, any and all claims for relief and damages; and

7.     Which arises directly or indirectly out of or is in any manner related to this settlement, including negotiation, of Claimant's claims.

8.     Notwithstanding anything herein to the contrary, this release is not intended to and does not release claims against a health care provider for alleged independent acts of medical malpractice first arising after the date signed below.

D.     **Warranty of Capacity to Execute Agreement.**  Claimant and the undersigned attorneys and their firms ("Claimant's Counsel") represent and warrant that:

1.     Claimant has the right and authority to execute this Release and receive the consideration set forth in Section J, below;

2.     Claimant has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations and causes of action referred to in this Release; and

3.     There are no other persons or entities, including governmental entities, who now have or may hereafter acquire the rights of Claimant to proceed against the Released Persons on any action, claim, demand, cause of action or controversy arising out of or relating in any manner whatsoever to Claimant's alleged injuries, losses, and any of the claims, demands, obligations and causes of action referred to in this Release.

E.     **Indemnification.**  Claimant agrees to hereby bind Claimant's heirs, personal representatives, successors, and assigns and to indemnify, repay and hold harmless the Released Persons from any claim or judgment, including any multiple damages (including double damages), against Released Persons by any spouse, former spouse, parent, child or other relatives of Claimant, or any other person or entity (including

5

federal or state governments, agencies thereof, or entities operating under any contract with any such federal or state government, agency, or entity), arising from or related to Claimant's alleged use of a DCOC.

F.   **Medical Bills, Liens, and Other Potential Rights for Reimbursement**.

1.   **Responsibility for Satisfaction of All Medical Expenses and Liens.**

(a)   Claimant agrees that it is the Claimant's responsibility to pay or have paid all past and present bills, costs, or Liens resulting from or arising out of Claimant's alleged injury from use of a DCOC. Claimant represents and warrants that all past and present bills, costs or Liens resulting from or arising out of the Claimant's alleged use of a DCOC have been paid or will be paid as a part of the settlement.  Claimant agrees that the Released Persons shall have no responsibility to pay or have paid any future bills, costs, or Liens resulting from or arising out of Claimant's alleged use of a DCOC. Claimant further represents and warrants that Claimant will not seek from any Released Person any compensation for any future bills, costs, or Liens resulting from or arising out of Claimant's alleged use of a DCOC.  Claimant agrees that the Released Persons shall have no responsibility whatsoever for satisfaction of any and all Liens, of any kind, that arise from or are related to payments made or services provided to Claimant, or on Claimant's behalf, and past, present, or future bills, costs or Liens incurred in connection with the claims asserted by Claimant related to Claimant's alleged use of a DCOC.

(b)   Claimant will indemnify, repay and hold the Released Persons harmless from any and all such bills, costs or Liens, known or unknown.  Specifically, if any governmental entity, or anyone acting on behalf of any governmental entity, seeks penalties, multiple damages (including double damages), or any other damages from the Released Persons relating to a right of recovery of such governmental entity related to benefits or eligibility, or payments by such governmental entity, or anyone acting by contract for such governmental entity, arising from or relating to Claimant's alleged use of a DCOC, Claimant will indemnify, repay, and hold the Released Persons harmless from any and all such penalties, damages, claims, and rights to payment, including any attorneys' fees, from such entities.

2.   **Procedure Regarding Payments by Governmental Payors.**  With respect to potential payments made on Claimant's behalf by Medicare, a Medicare intermediary or carrier; any other federal or state government, agency or entity; or

any other entity operating under contract with any of the previously mentioned entities (collectively "Governmental Payors"), then as **CONDITIONS PRECEDENT** to the distribution of any Final Award from the Qualified Settlement Fund to the Claimant, as set forth the Settlement Agreement (hereinafter "SA"), Claimant and Claimant's Counsel agree as follows:

(a)     **Identification of Governmental Payors.**   Claimant and Claimant's Counsel agree to identify every Governmental Payor that may have made any payments on behalf of Claimants in any way related to Claimant's alleged use of a DCOC from the time Claimant alleges she first suffered injury from the alleged use of a DCOC through the date the SA is fully executed. Claimant and Claimant's Counsel represent and warrant they will use best efforts and reasonable diligence to identify such "Government Payors."

(b)     **Notice of Settlement**. Claimant and Claimant's Counsel agree to provide Bayer's attorneys, either directly or through a Lien Resolution Firm of their choice, a copy of a letter or other communication notifying each Governmental Payor identified pursuant to Section II.F.2(a) that: (i) a claim related to Claimant's alleged use of a DCOC has settled; and (ii) requesting a written response indicating whether each Governmental Payor holds any interest, including liens and subrogation interests, related in any way to Claimant's alleged use of a DCOC and the claimed amount of any such interest.

(c)     **Satisfaction of Governmental Payors' Interests**. Claimant and Claimant's Counsel agree, either directly or through a Lien Resolution Firm of their choice, to provide to Bayer's counsel written documentation demonstrating that each Governmental Payor identified pursuant to Section II.F.2(a) either:

      (i)     holds no interest, including any Liens, in the Final Award; or

      (ii)     expressly releases any and all entities from any liability whatsoever for any interest, including any Liens, in the Final Award; or

      (iii)     agrees any interest, including any Liens, in the Final Award has been finally and completely satisfied; or

      (iv)     has reached a binding agreement with Claimant setting forth in detail a specific dollar amount or percentage of the Final Award that the Governmental Payor agrees is the maximum amount it will seek from any and all entities to fully and finally resolve any interest, including any Liens, in the Final Award.

For the avoidance of doubt, the CONDITION PRECEDENT in this Section is not a CONDITION PRECEDENT to BHCP's funding obligations into the Qualified Settlement Fund under Section 2.01 but is only a CONDITION PRECEDENT to the distribution of any funds withheld from the Claimant's Final Award from the Qualified Settlement Fund to the Claimant.

3.   **Procedure Regarding Payments by Private Payors**.  With respect to potential payments made on Claimant's behalf by any commercial health insurance provider and/or managed care plan or any other entity operating under contract with any commercial health insurance provider and/or managed care plan (collectively "Private Payors"), then as **CONDITIONS PRECEDENT** to the distribution of any Final Award from the Qualified Settlement Fund to the Claimant, as set forth in the SA, Claimant and Claimant's Counsel agree as follows:

(a)   <u>Identification of Private Payors</u>.  Claimant and Claimant's Counsel agree to identify every Private Payor that may have made any payments on behalf of Claimants in any way related to Claimant's alleged use of a DCOC from the time Claimant  alleges she first suffered injury from the alleged use of a DCOC through the date the SA is fully executed. Claimant and Claimant's Counsel represent and warrant they will use best efforts and reasonable diligence to identify such Private Payors.

(b)   <u>Satisfaction of Private Payors' Interests</u>. Claimant and Claimant's Counsel agree to comply with the requirements of one of the six options below relating to protecting the interests of Private Payors:

(i)   Option 1: Claimant and Claimant's Counsel agree to satisfy each and every requirement of Section II.F.2 above with respect to all Private Payors identified pursuant to Section II.F.3(a).

(ii)   Option 2: If Claimant and each and every Private Payor identified pursuant to Section II.F.3(a) participate in the Private Lien Resolution Program administered by the Garretson Resolution Group ("PLRP"), then no amount needs to be withheld for payment of the Private Payors.

(iii)   Option 3: If Claimant participates in the PLRP but at least one of the Private Payors identified pursuant to Section II.F.3(a) does not participate in the PLRP ("Non-Participating Private Payor") and Claimant provides notice of this settlement as set forth in Section II.F.2(b) to each such Non-Participating Private Payor, then Claimant and Claimant's Counsel agree: (1) 30% of the gross settlement proceeds shall be withheld in the QSF established pursuant to the SA; (2) the 30% shall be released 45 days after

8

notice is given <u>unless</u> any Non-Participating Private Payor asserts a right to a portion of the settlement proceeds during these 45 days; and (3) if any Non-Participating Private Payor asserts a right to a portion of the settlement proceeds during these 45 days, the 30% shall be released only when Claimant has reached a binding agreement with such Non-Participating Private Payors as set forth in Section II.F.2(c)(iv). If all such Non-Participating Private Payors agree to participate in the PLRP, then the procedures set forth in Section II.F.3(b)(ii) shall govern.

(iv)     Option 4: If Claimant participates in the PLRP but at least one of the Private Payors identified pursuant to Section II.F.3(a) is a Non-Participating Private Payor and the Garretson Resolution Group provides a "generic notice" to such Non-Participating Private Payors, which notice is provided without any identifying information about the Claimant but states that at least one of the Private Payors' insureds has settled a claim related to the insureds' alleged use of a DCOC and that a PLRP has been established, then Claimant and Claimant's Counsel agree: (1) 30% of the gross settlement proceeds shall be withheld in the QSF established pursuant to the SA; (2) the 30% shall be released 180 days after generic notice is given <u>unless</u> any Non-Participating Private Payor asserts a right to a portion of the settlement proceeds during these 180 days; and (3) if any Non-Participating Private Payor asserts a right to a portion of the settlement proceeds during these 180 days, the 30% shall be released only when Claimant has reached a binding agreement with such Non-Participating Private Payors as set forth in Section II.F.2(c)(iv). If all such Non-Participating Private Payors agree to participate in the PLRP, then the procedures set forth in Section II.F.3(b)(ii) shall govern.

(v)      Option 5: If Claimant does not participate in the PLRP and refuses to give notice to each and every Private Payor identified pursuant to Section II.F.3(a), then Claimant and Claimant's Counsel agree: (1) 30% of the gross settlement proceeds shall be withheld in the QSF established pursuant to the SA; (2) the 30% shall be released two years from the date this Release is executed <u>unless</u> any Private Payor asserts a right to a portion of the settlement proceeds during these two years; and (3) if any Private Payor asserts a right to a portion of the settlement proceeds during these two years, the 30% shall be released only when Claimant has reached a binding agreement with such Private Payors as set forth in Section II.F.2(c)(iv).

9

(vi)     Option 6:  If a Claimant did not have a Private Payor or governmental benefits that paid for her treatment, she shall provide an affidavit stating so.  The result of submitting such an affidavit shall be that the entire amount of the award shall be released upon receipt of the affidavit by the Claims Administrator.

For the avoidance of doubt, the CONDITION PRECEDENT in this Section is not a CONDITION PRECEDENT to BHCP's funding obligations into the Qualified Settlement Fund under Section 2.01 but is only a CONDITION PRECEDENT to the distribution of any funds withheld from the Claimant's Final Award from the Qualified Settlement Fund to the Claimant.

4.    **Withholding of Funds for Future Satisfaction of Governmental and/or Private Payors' Interests.**

(a)    With respect to any Governmental and/or Private Payors that reach a binding agreement with Claimant, as set forth in Section II.F.2(c)(iv), Claimant and Claimant's Counsel further agree any Final Award as set forth in the SA shall not include any amounts that may be owed by Claimant to any and all Governmental and/or Private Payors under the terms of such agreement(s).

(b)    Claimant and Claimant's Counsel agree that funds will be withheld within the QSF at all times sufficient to satisfy any and all maximum amounts any and all Governmental and/or Private Payors have agreed to with Claimant, as set forth in Section II.F.2(c)(iv), until such time as the amount required to secure a full release of any and all entities from any liability whatsoever for such interest(s) in the settlement funds has been finally and completely agreed upon between Claimant and the Governmental and/or Private Payor.

(c)    Once an amount required to secure a full release of any and all entities from any liability whatsoever for such interest(s) in the settlement funds has been finally and completely agreed upon between Claimant and the Governmental and/or Private Payor, that interest will be satisfied from the funds withheld within the QSF for this purpose prior to any funds being so withheld are released from the QSF.

G.    **Claimant's Eligibility for Medicare and Claimant's Identifying Information.**

Pursuant to the requirements of Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, codified at 42 U.S.C. 1395y(b)(7) and (b)(8), Claimant and Claimant's Counsel agree:

1.      Claimant and Claimant's Counsel represent and warrant they have provided Bayer with the following complete and accurate information:  (1) Claimant's Social Security Number; (2) Claimant's full legal names; and (3) Claimant's date of birth.

2.      By signing this Release, Claimant acknowledges and recognizes that Bayer or its designated agent has and/or will use the information provided to query the Centers for Medicare and Medicaid Services Coordination of Benefits Contractor ("COBC") to determine Medicare eligibility, and may report this settlement to the COBC pursuant to 42 U.S.C. § 1395y(b)(8).

**H.**      **Attorney Liens**.  Claimant represents and warrants that all legal expenses, bills, costs or contingency fee agreements resulting from or arising out of representation of Claimant by any attorney in relation to Claimant's alleged use of a DCOC, have been paid or will be paid out of the proceeds of the settlement and are Claimant's responsibility to pay, and that any liens based on any legal expenses, bills, costs or contingency fee agreements incurred as a result of Claimant's alleged use of a DCOC will be satisfied by Claimant. Claimant will indemnify, repay and hold the Released Persons harmless from any and all such claims.

**I.**      **No Additional Recovery.**  It is the intent of this Release that Claimant shall not recover, directly or indirectly, any sums for Settled Claims from the Released Persons or any other person or entity other than the funds received pursuant to this Release and set forth in Section J, below.  If, despite the provisions of this paragraph, any Released Person incurs any payment or judgment due to any claim, including a claim for contribution or indemnity arising out of a claim brought by the Claimant against another person, Claimant shall indemnify, repay and hold harmless the Released Person for such payment or judgment.

**J.**      **Payment.**

1.      **Timing and Amount.** The settlement amount will become due and payable to Claimant as set forth in the SA ("Payment").

2.      **Full and Fair Consideration.**  Payment is made as full and fair consideration for releasing all claims identified in §A.3 of this Release and is being made on account of personal injuries within the meaning of §104 of the Internal Revenue Code of 1986, as amended, and/or, where applicable, wrongful death.

3.      **Satisfaction of Settled Claims.**  Payment is made in satisfaction of any and all Settled Claims that Claimant has or may have against the Released Persons.

4.      **Tax Consequences.**  No warranty or representation of the tax consequences, if any, is made by Released Persons or by Claimant's Counsel.

11

5. **Consequences of Breach.** Claimant agrees that if they or anyone or any entity on Claimant's' behalf hereafter commence, join in, or in any manner seek relief through any suit, except to seek enforcement of the settlement agreement, arising from, growing out of, based upon, or relating to any of the claims released herein, or in any manner assert against the Released Persons, or any of them, any of the claims released hereunder, then Claimant shall pay to the Released Persons, and each of them, proven damages caused to the Released Person thereby.

6. **Dismissal.** If Claimant has filed an action against any of the Released Persons in connection with Claimant's alleged use of a DCOC, and such action is pending in any court or tribunal at the time of the execution of this Release, then concurrently with such execution, Claimant agrees to direct and authorize her counsel to execute and deliver to Bayer's counsel a Dismissal With Prejudice or in Pennsylvania a Praecipe to Settle, Discontinue and End with Prejudice, regarding the pending action, and Claimant hereby authorizes Bayer's counsel to file said Dismissal with the court or tribunal and enter it as a matter of record, which filing shall fully and finally dispose of all claims asserted against any of the Released Persons in said action. Bayer's Counsel shall not file said Dismissal until after Bayer has provided written or e-mail notification to Plaintiffs' Counsel that the settlement funds, or a portion of the settlement funds may be distributed to the Claimant from the QSF as set forth in the SA.

7. **Opportunity to Consult with Counsel.** Claimant acknowledges and represents that  Claimant has had the opportunity to confer with Claimant's Counsel regarding, and to ask questions about, (i) the settlement generally, (ii) the sum to be allocated to them in consideration for this Release, (iii) the relationship of that sum to the merits of their individual claims, (iv) the terms of this Release, and that Claimant's Counsel has answered Claimant's questions and explained the settlement and this Release to her satisfaction.

K. **Expenses and Attorney's Fees.** Claimant understands and acknowledges that the parties will each pay their own expenses and attorneys' fees relating to Claimant's claim and the settlement thereof.

L. **No Admission of Liability.** Claimant understands and acknowledges that nothing contained in this Release, any documents being executed and delivered pursuant to this Release, nor any actions taken in furtherance of this Release, shall constitute or be deemed or construed as an admission of liability or wrongdoing or of any position whatsoever in connection with any matters relating to Claimant's alleged use of a DCOC or otherwise.  Claimant acknowledges that Released Persons expressly deny any liability relating to DCOCs for claims as asserted by Claimant or as may be asserted by Claimant.

M. **Construction of Release**.  This Release shall be construed as a whole in accordance with its fair meaning and in accordance with the laws of the State of Illinois.  The terms of this Release have been negotiated by attorneys for the Released Persons and Claimant and the

language of the Release shall not be construed in favor of or against anyone.  The headings used herein are for reference only and shall not affect the construction of this Release.

N.      **Entire Agreement.**  This Release constitutes the entire agreement between Claimant and the Released Persons with respect to the subject matter of this Release, and there are no other written or oral agreements, understandings or arrangements.  The terms of this Release may not be modified or waived except in writing signed by the parties hereto.

O.      **Governing Law.**  Claimant agrees that the provisions of this Release will be interpreted in accordance with, and governed by, the laws of the State of Illinois.  In the event of a dispute involving this Release, the parties irrevocably agree that venue for any such dispute shall lie in any court of competent jurisdiction in the State of Illinois.

P.      **Severability.**  In the event that any provision in or obligation under this Release shall be invalid, illegal, or unenforceable in any jurisdiction as to either Claimant or the Released Persons, or both, the validity, legality, and enforceability of other provisions in or obligations under this Release shall not in any way be affected or impaired thereby.

Q.      **Agreement May Be Executed in Counterparts.**  This Release may be executed in counterparts, which together shall constitute a fully executed original.

R.      **Acknowledgments.**  Claimant declares and acknowledges that Claimant has read and understand the terms of this Release and of the SA, that she has been represented by her attorneys with regard to the execution of this Release and the SA, and that she executes this Release voluntarily after consultation with her attorneys and without being induced, pressured or unduly influenced by any unwritten statement or representation made by any person acting on behalf of Bayer, the Released Persons, or anyone else.  Claimant further declares and acknowledges that she fully understands the nature, sufficiency and value of the consideration set forth in Section J, above, and agrees to accept said consideration for the releases and other benefits granted to the Released Persons herein.


Subscribed and sworn before me this ____ day        _____
of ____, 2013.                                      _____("Claimant" herein)
                                                    Social Security Number: _____
                                                    Date:  _____
_____
Notary Public                                       _____
My Commission Expires:                              _____, Esq., individually
_____                  and as authorized agent of _____
                                                    Date:  _____

13

Appendix E-2

## RELEASE, INDEMNITY, AND ASSIGNMENT [FOR CASES WITH DERIVATIVE PLAINTIFFS]

THIS RELEASE, INDEMNITY, and ASSIGNMENT ("Release") is made and entered into by Claimant _____ ("Claimant") on the date signed below.

### I.    RECITALS

WHEREAS Claimant has asserted a claim against Bayer HealthCare Pharmaceuticals Inc. ("BHCP"), other Bayer entities (as defined below), Barr Laboratories, Inc., other Barr Teva entities, and other defendants (collectively, "Defendants"), relating to Claimant's alleged use of a drosperinone-containing oral contraceptive ("DCOC" or "DCOCs").

WHEREAS Defendants have denied and continue to deny any liability based on Claimant's claims, allegations and assertions; and

WHEREAS the parties have agreed to resolve fully all claims, differences and controversies by and between Claimant (and/or any Other Releasing Persons, as defined below) and BHCP and the other Released Persons (as defined below) that exist, have existed or may exist in the future and that arise from, involve or relate to Claimant's alleged use of a DCOC.

### II.    RELEASE

**A.    <u>Complete and General Release, Covenant Not To Sue and Assignment.</u>**

1.    **Claimants.** Claimant (and/or any Other Releasing Persons, as defined below), individually and for such person's heirs, beneficiaries, agents, estate, executors, administrators, personal representatives, successors and assigns, hereby release and forever discharge, and agree and covenant not to sue the Released Persons, as defined below, of and from all Settled Claims, as defined below.  All releases, warranties, representations, covenants, assignments, promises and agreements of any kind made in this Release on my own behalf are also made on behalf of each and every Other Releasing Person (as defined below).

2.    **Other Releasing Persons**.  The term "Other Releasing Persons" as used herein shall mean any and all persons who have or assert any right to sue Bayer and/or any other Released Persons, independently, derivatively or otherwise, by reason of their personal relationship with me, and/or otherwise by, through or under, or otherwise in relation to, me ("Derivative Claimants").  Derivative Claimants include, but are not limited to, my heirs, beneficiaries, surviving spouse (including, but not limied to, a putative or common law spouse), surviving domestic partner and/or next of kin, if any.

3.    **Released Persons.**  The term "Released Persons" as used herein shall mean:

(a)     Bayer AG and each of its subsidiaries, affiliates, and divisions, including but not limited to, Bayer Corporation, Bayer, Inc., Bayer HealthCare LLC, Bayer HealthCare Pharmaceuticals Inc., Bayer Pharmaceutical Corporation, Bayer Schering Pharma AG, Bayer Healthcare AG, and Bayer Pharmaceuticals (collectively "Bayer");

(b)     All entities related to or alleged to be related to Bayer regarding DCOCs, including, but not limited to, Berlex, Inc., Berlex Laboratories, Inc., Berlex International Laboratories, Inc.;

(c)     Barr Laboratories, Inc., Barr Pharmaceuticals, LLC (f/k/a Barr Pharmaceuticals, Inc.), Teva Pharmaceuticals USA, Inc., and Teva Pharmaceuticals Industries Ltd (collectively, "Barr Teva");

(d)     Any and all suppliers of materials, components, and services used in the manufacture of DCOCs, including the labeling and packaging thereof;

(e)     All distributors of DCOCs, including wholesale distributors, retail distributors, private label distributors, pharmacists, pharmacies, hospitals, and clinics, with respect to their distribution of DCOCs, and sale representatives;

(f)     All health care providers, whether entities or individuals, including without limitation physicians, pharmacists, pharmacies, hospitals, and medical centers who provided treatment in any way related to Claimant's alleged use of a DCOC, all health care providers who prescribed a DCOC for Claimant, all pharmacists and pharmacies who dispensed a DCOC to Claimant, except that health care providers are not Released Persons with respect to claims against a health care provider for alleged independent acts of medical malpractice first arising after the date signed below;

(g)     Any other person against whom Claimant could attempt to assert any claim, liability, or right to payment arising out of or related in any way to Claimant's alleged use of a DCOC, whether as a joint tortfeasor or otherwise, under any theory of law or equity;

(h)     Any attorney, law firm, and its employees representing Bayer or other Released Persons in regard to Claimant's alleged use of a DCOC and Claimant's asserted claims against Bayer or other Released Persons;

(i)     Any insurers, excess and umbrella insurance carriers, reinsurance carriers, any additional individual or entity which is an insured on any policy of insurance insuring any Released Person and anyone acting on their joint or several behalf in relation to any Settled Claim, as defined below; and

2

(j)    Any past, present or future officer, director, shareholder, subsidiary, employee, partner, trustee, representative, agent, servant, attorney, predecessor, successor, or assignee of any of the above.

4.    **Settled Claims.** The term "Settled Claims" shall mean any and all claims, causes of action, demands, damages, costs, expenses, liabilities or other losses, whether in law or in equity, including assigned claims, whether known or unknown, asserted or unasserted, regardless of the legal theory, existing now or arising in the future, arising out of or relating to the purchase, use, manufacture, sale, design, distribution, promotion, marketing, clinical investigation, testing, administration, regulatory approval, and/or labeling of a DCOC, alone or in combination with any other substance, or any other transaction between Claimant and Released Persons relating to Claimant's alleged use of a DCOC. The term "Settled Claims" also includes any claims, causes of action, demands, damages, costs, expenses, liabilities or other losses, whether in law or in equity, including assigned claims, whether known or unknown, asserted or unasserted, regardless of the legal theory, existing now or arising in the future, arising directly or indirectly out of or in any way related to, this Release and the events surrounding its negotiation and execution. These "Settled Claims" also include any cause of action that Claimant may attempt to assert against any attorney, law firm, or its employees as it relates to their representation of Bayer and/or other Released Person in connection with this settlement or the defense of Bayer and/or other Released Persons as that defense relates to DCOC claims asserted by any plaintiff or claimant, including Claimant. These "Settled Claims" include, without limitation and by way of example, all DCOC related claims for damages or remedies of whatever kind or character, known or unknown, that are now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision, or in any other manner, for:

(a)    Personal injury and/or bodily injury, damage, death, fear of disease or injury, including without limitation reduced future medical treatment options, mental or physical pain or suffering, emotional or mental harm, or loss of enjoyment of life;

(b)    Compensatory damages, punitive, exemplary, statutory and other multiple damages or penalties of any kind;

(c)    Loss of wages, income, earnings, and earning capacity, medical expenses, medical benefits, including rights to future Medicare benefits, doctor, hospital, nursing, and drug bills;

(d)    Loss of support, services, consortium, companionship, society or affection, or damage to familial relations, by spouses, former spouses, parents, children, other relatives or "significant others" of Claimants;

3

(e)     Consumer fraud, refunds, unfair business practices, deceptive trade practices, unfair and deceptive acts and practices, fraudulent inducement, and other similar claims whether arising under statute, regulation, or judicial decision;

(f)     Wrongful death and survival actions;

(g)     Medical screening and monitoring, injunctive and declaratory relief;

(h)     Economic or business losses or disgorgement of profit; and

(i)     Prejudgment or post-judgment interest.

The term "Settled Claims" <u>does not</u> include independent claims of professional malpractice, first arising after the date signed below, against any health care providers.

5.   **Applicability.**   The releases herein are specifically intended to operate and be applicable even if it is alleged, charged, or proven that some or all of the claims or damages released are caused in whole or in part by the negligence, negligence per se, gross negligence, breach of warranty, violation of statute or common law, defective product, malice, or conduct of any type by any of the Released Persons, Claimant, or anyone else.

6.   **Assignment.**   Any and all claims or damages directly or indirectly arising from or in connection with any of the allegations made or that might have been made arising from or relating to Claimant's alleged use of a DCOC and any other claims which were or could have been raised are hereby assigned in full to the Released Persons.

B.   <u>**Unknown Facts.**</u>   Claimant expressly understands and agrees that this Release is intended to and does cover any and all losses, injuries, damages and claims of every kind and nature whatsoever, whether direct or indirect, known or unknown, and suspected or unsuspected.  Claimant acknowledge that Claimant may hereafter discover facts different from, or in addition to, those which they now know to be, or believe to be, true with respect to Claimant's alleged injuries, losses and claims. Claimant acknowledges that Claimant may learn of additional facts as they relate to DCOCs and the Released Persons' activities as they relate to DCOCs.  Claimant agrees that this Release, and the specific releases contained herein, shall be and remain effective in all respects, notwithstanding such different or additional facts and the subsequent discovery thereof.

C.   <u>**Scope of Release.**</u>   This Release is intended by Claimant to include any liability whatsoever:

1.     Which arises directly or indirectly out of or is in any manner related to any alleged defect in a DCOC or the purchase, use, manufacture, sale, design,

distribution, promotion, marketing, clinical investigation, testing, administration, regulatory approval or labeling of a DCOC;

2. Which arises directly or indirectly from the actions of Released Persons or any other person involved in the manufacture, sale, design, distribution, promotion, marketing, clinical investigation, testing, administration, regulatory approval or labeling of a DCOC and from the actions of any person affiliated with or representing the Released Persons;

3. Which arises directly or indirectly out of or is in any manner related to any alleged representations, promises, statements, warranties (express or implied) or guarantees given and made by any of the Released Persons or anyone affiliated with any Released Person in connection with a DCOC;

4. Which arises directly or indirectly out of or is in any manner related to Claimant's alleged use of a DCOC, and any injuries or damages resulting directly or indirectly therefrom;

5. Which arises directly or indirectly out of or is in any manner related to Claimant's alleged use of a DCOC, or any injuries and losses to Claimant, without limitation, including those injuries or losses to Claimant that may hereafter develop or become known;

6. Which arises directly or indirectly out of or is in any manner related to any of the matters, occurrences or transactions which could have been asserted in connection with Claimant's alleged use of a DCOC, including, without limitation, any and all claims for relief and damages; and

7. Which arises directly or indirectly out of or is in any manner related to this settlement, including negotiation, of Claimant's claims.

8. Notwithstanding anything herein to the contrary, this release is not intended to and does not release claims against a health care provider for alleged independent acts of medical malpractice first arising after the date signed below.

D. **Warranty of Capacity to Execute Agreement.**  Claimant and the undersigned attorneys and their firms ("Claimant's Counsel") represent and warrant that:

1. Claimant has the right and authority to execute this Release and receive the consideration set forth in Section J, below;

2. Claimant has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations and causes of action referred to in this Release; and

5

3. There are no other persons or entities, including governmental entities, who now have or may hereafter acquire the rights of Claimant to proceed against the Released Persons on any action, claim, demand, cause of action or controversy arising out of or relating in any manner whatsoever to Claimant's alleged injuries, losses, and any of the claims, demands, obligations and causes of action referred to in this Release.

E. **Indemnification.** Claimant agrees to hereby bind Claimant's heirs, personal representatives, successors, and assigns and to indemnify, repay and hold harmless the Released Persons from any claim or judgment, including any multiple damages (including double damages), against Released Persons by any spouse, former spouse, parent, child or other relatives of Claimant, or any other person or entity (including federal or state governments, agencies thereof, or entities operating under any contract with any such federal or state government, agency, or entity), arising from or related to Claimant's alleged use of a DCOC.

F. **Medical Bills, Liens, and Other Potential Rights for Reimbursement**.

1. **Responsibility for Satisfaction of All Medical Expenses and Liens.**

(a) Claimant agrees that it is the Claimant's responsibility to pay or have paid all past and present bills, costs, or Liens resulting from or arising out of Claimant's alleged injury from use of a DCOC. Claimant represents and warrants that all past and present bills, costs or Liens resulting from or arising out of the Claimant's alleged use of a DCOC have been paid or will be paid as a part of the settlement. Claimant agrees that the Released Persons shall have no responsibility to pay or have paid any future bills, costs, or Liens resulting from or arising out of Claimant's alleged use of a DCOC. Claimant further represents and warrants that Claimant will not seek from any Released Person any compensation for any future bills, costs, or Liens resulting from or arising out of Claimant's alleged use of a DCOC. Claimant agrees that the Released Persons shall have no responsibility whatsoever for satisfaction of any and all Liens, of any kind, that arise from or are related to payments made or services provided to Claimant, or on Claimant's behalf, and past, present, or future bills, costs or Liens incurred in connection with the claims asserted by Claimant related to Claimant's alleged use of a DCOC.

(b) Claimant will indemnify, repay and hold the Released Persons harmless from any and all such bills, costs or Liens, known or unknown. Specifically, if any governmental entity, or anyone acting on behalf of any governmental entity, seeks penalties, multiple damages (including double damages), or any other

damages from the Released Persons relating to a right of recovery of such governmental entity related to benefits or eligibility, or payments by such governmental entity, or anyone acting by contract for such governmental entity, arising from or relating to Claimant's alleged use of a DCOC, Claimant will indemnify, repay, and hold the Released Persons harmless from any and all such penalties, damages, claims, and rights to payment, including any attorneys' fees, from such entities.

2. **Procedure Regarding Payments by Governmental Payors.**  With respect to potential payments made on Claimant's behalf by Medicare, a Medicare intermediary or carrier; any other federal or state government, agency or entity; or any other entity operating under contract with any of the previously mentioned entities (collectively "Governmental Payors"), then as **CONDITIONS PRECEDENT** to the distribution of any Final Award from the Qualified Settlement Fund to the Claimant, as set forth the Settlement Agreement (hereinafter "SA"), Claimant and Claimant's Counsel agree as follows:

(a) **Identification of Governmental Payors.**  Claimant and Claimant's Counsel agree to identify every Governmental Payor that may have made any payments on behalf of Claimants in any way related to Claimant's alleged use of a DCOC from the time Claimant alleges she first suffered injury from the alleged use of a DCOC through the date the SA is fully executed.  Claimant and Claimant's Counsel represent and warrant they will use best efforts and reasonable diligence to identify such "Government Payors."

(b) **Notice of Settlement**.  Claimant and Claimant's Counsel agree to provide Bayer's attorneys, either directly or through a Lien Resolution Firm of their choice, a copy of a letter or other communication notifying each Governmental Payor identified pursuant to Section II.F.2(a) that: (i) a claim related to Claimant's alleged use of a DCOC has settled; and (ii) requesting a written response indicating whether each Governmental Payor holds any interest, including liens and subrogation interests, related in any way to Claimant's alleged use of a DCOC and the claimed amount of any such interest.

(c) **Satisfaction of Governmental Payors' Interests**.  Claimant and Claimant's Counsel agree, either directly or through a Lien Resolution Firm of their choice, to provide to Bayer's counsel written documentation demonstrating that each Governmental Payor identified pursuant to Section II.F.2(a) either:

(i) holds no interest, including any Liens, in the Final Award; or

(ii)    expressly releases any and all entities from any liability whatsoever for any interest, including any Liens, in the Final Award; or

(iii)    agrees any interest, including any Liens, in the Final Award has been finally and completely satisfied; or

(iv)    has reached a binding agreement with Claimant setting forth in detail a specific dollar amount or percentage of the Final Award that the Governmental Payor agrees is the maximum amount it will seek from any and all entities to fully and finally resolve any interest, including any Liens, in the Final Award.

For the avoidance of doubt, the CONDITION PRECEDENT in this Section is not a CONDITION PRECEDENT to BHCP's funding obligations into the Qualified Settlement Fund under Section 2.01 but is only a CONDITION PRECEDENT to the distribution of any funds withheld from the Claimant's Final Award from the Qualified Settlement Fund to the Claimant.

3.    **Procedure Regarding Payments by Private Payors**.  With respect to potential payments made on Claimant's behalf by any commercial health insurance provider and/or managed care plan or any other entity operating under contract with any commercial health insurance provider and/or managed care plan (collectively "Private Payors"), then as **CONDITIONS PRECEDENT** to the distribution of any Final Award from the Qualified Settlement Fund to the Claimant, as set forth in the SA, Claimant and Claimant's Counsel agree as follows:

(a)    <u>**Identification of Private Payors**</u>.  Claimant and Claimant's Counsel agree to identify every Private Payor that may have made any payments on behalf of Claimants in any way related to Claimant's alleged use of a DCOC from the time Claimant  alleges she first suffered injury from the alleged use of a DCOC through the date the SA is fully executed. Claimant and Claimant's Counsel represent and warrant they will use best efforts and reasonable diligence to identify such Private Payors.

(b)    <u>**Satisfaction of Private Payors' Interests**</u>. Claimant and Claimant's Counsel agree to comply with the requirements of one of the six options below relating to protecting the interests of Private Payors:

(i)    Option 1: Claimant and Claimant's Counsel agree to satisfy each and every requirement of Section II.F.2 above with respect to all Private Payors identified pursuant to Section II.F.3(a).

(ii)     Option 2: If Claimant and each and every Private Payor identified pursuant to Section II.F.3(a) participate in the Private Lien Resolution Program administered by the the Garretson Resolution Group ("PLRP"), then no amount needs to be withheld for payment of the Private Payors.

(iii)    Option 3: If Claimant participates in the PLRP but at least one of the Private Payors identified pursuant to Section II.F.3(a) does not participate in the PLRP ("Non-Participating Private Payor") and Claimant provides notice of this settlement as set forth in Section II.F.2(b) to each such Non-Participating Private Payor, then Claimant and Claimant's Counsel agree: (1) 30% of the gross settlement proceeds shall be withheld in the QSF established pursuant to the SA; (2) the 30% shall be released 45 days after notice is given <u>unless</u> any Non-Participating Private Payor asserts a right to a portion of the settlement proceeds during these 45 days; and (3) if any Non-Participating Private Payor asserts a right to a portion of the settlement proceeds during these 45 days, the 30% shall be released only when Claimant has reached a binding agreement with such Non-Participating Private Payors as set forth in Section II.F.2(c)(iv). If all such Non-Participating Private Payors agree to participate in the PLRP, then the procedures set forth in Section II.F.3(b)(ii) shall govern.

(iv)    Option 4: If Claimant participates in the PLRP but at least one of the Private Payors identified pursuant to Section II.F.3(a) is a Non-Participating Private Payor and the Garretson Resolution Group provides a "generic notice" to such Non-Participating Private Payors, which notice is provided without any identifying information about the Claimant but states that at least one of the Private Payors' insureds has settled a claim related to the insureds' alleged use of a DCOC and that a PLRP has been established, then Claimant and Claimant's Counsel agree: (1) 30% of the gross settlement proceeds shall be withheld in the QSF established pursuant to the SA; (2) the 30% shall be released 180 days after generic notice is given <u>unless</u> any Non-Participating Private Payor asserts a right to a portion of the settlement proceeds during these 180 days; and (3) if any Non-Participating Private Payor asserts a right to a portion of the settlement proceeds during these 180 days, the 30% shall be released only when Claimant has reached a binding agreement with such Non-Participating Private Payors as set forth in Section II.F.2(c)(iv). If all such Non-Participating Private Payors agree to participate in the PLRP, then the procedures set forth in Section II.F.3(b)(ii) shall govern.

9

(v)     Option 5: If Claimant does not participate in the PLRP and refuses to give notice to each and every Private Payor identified pursuant to Section II.F.3(a), then Claimant and Claimant's Counsel agree: (1) 30% of the gross settlement proceeds shall be withheld in the QSF established pursuant to the SA; (2) the 30% shall be released two years from the date this Release is executed <u>unless</u> any Private Payor asserts a right to a portion of the settlement proceeds during these two years; and (3) if any Private Payor asserts a right to a portion of the settlement proceeds during these two years, the 30% shall be released only when Claimant has reached a binding agreement with such Private Payors as set forth in Section II.F.2(c)(iv).

(vi)    Option 6:   If a Claimant did not have a Private Payor or governmental benefits that paid for her treatment, she shall provide an affidavit stating so.  The result of submitting such an affidavit shall be that the entire amount of the award shall be released upon receipt of the affidavit by the Claims Administrator.

For the avoidance of doubt, the CONDITION PRECEDENT in this Section is not a CONDITION PRECEDENT to BHCP's funding obligations into the Qualified Settlement Fund under Section 2.01 but is only a CONDITION PRECEDENT to the distribution of any funds withheld from the Claimant's Final Award from the Qualified Settlement Fund to the Claimant.

4.     **Withholding of Funds for Future Satisfaction of Governmental and/or Private Payors' Interests.**

(a)    With respect to any Governmental and/or Private Payors that reach a binding agreement with Claimant, as set forth in Section II.F.2(c)(iv), Claimant and Claimant's Counsel further agree any Final Award as set forth in the SA shall not include any amounts that may be owed by Claimant to any and all Governmental and/or Private Payors under the terms of such agreement(s).

(b)    Claimant and Claimant's Counsel agree that funds will be withheld within the QSF at all times sufficient to satisfy any and all maximum amounts any and all Governmental and/or Private Payors have agreed to with Claimant, as set forth in Section II.F.2(c)(iv), until such time as the amount required to secure a full release of any and all entities from any liability whatsoever for such interest(s) in the settlement funds has been finally and completely agreed upon between Claimant and the Governmental and/or Private Payor.

10

(c)     Once an amount required to secure a full release of any and all entities from any liability whatsoever for such interest(s) in the settlement funds has been finally and completely agreed upon between Claimant and the Governmental and/or Private Payor, that interest will be satisfied from the funds withheld within the QSF for this purpose prior to any funds being so withheld are released from the QSF.

**G.**     **Claimant's Eligibility for Medicare and Claimant's Identifying Information.**

Pursuant to the requirements of Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, codified at 42 U.S.C. 1395y(b)(7) and (b)(8), Claimant and Claimant's Counsel agree:

1.      Claimant and Claimant's Counsel represent and warrant they have provided Bayer with the following complete and accurate information:  (1) Claimant's Social Security Number; (2) Claimant's Claimant's full legal names; and (3) Claimant's date of birth.

2.      By signing this Release, Claimant acknowledges and recognizes that Bayer or its designated agent has and/or will use the information provided to query the Centers for Medicare and Medicaid Services Coordination of Benefits Contractor ("COBC") to determine Medicare eligibility, and may report this settlement to the COBC pursuant to 42 U.S.C. § 1395y(b)(8).

**H.**     **Attorney Liens.**  Claimant represents and warrants that all legal expenses, bills, costs or contingency fee agreements resulting from or arising out of representation of Claimant by any attorney in relation to Claimant's alleged use of a DCOC, have been paid or will be paid out of the proceeds of the settlement and are Claimant's responsibility to pay, and that any liens based on any legal expenses, bills, costs or contingency fee agreements incurred as a result of Claimant's alleged use of a DCOC will be satisfied by Claimant. Claimant will indemnify, repay and hold the Released Persons harmless from any and all such claims.

**I.**     **No Additional Recovery.**  It is the intent of this Release that Claimant shall not recover, directly or indirectly, any sums for Settled Claims from the Released Persons or any other person or entity other than the funds received pursuant to this Release and set forth in Section J, below.  If, despite the provisions of this paragraph, any Released Person incurs any payment or judgment due to any claim, including a claim for contribution or indemnity arising out of a claim brought by the Claimant against another person, Claimant shall indemnify, repay and hold harmless the Released Person for such payment or judgment.

**J.**     **Payment.**

11

1.   **Timing and Amount.** The settlement amount will become due and payable to Claimant as set forth in the SA ("Payment").

2.   **Full and Fair Consideration.**  Payment is made as full and fair consideration for releasing all claims identified in §A.3 of this Release and is being made on account of personal injuries within the meaning of §104 of the Internal Revenue Code of 1986, as amended, and/or, where applicable, wrongful death.

3.   **Satisfaction of Settled Claims.**  Payment is made in satisfaction of any and all Settled Claims that Claimant has or may have against the Released Persons.

4.   **Tax Consequences.**  No warranty or representation of the tax consequences, if any, is made by Released Persons or by Claimant's Counsel.

5.   **Consequences of Breach.**  Claimant agrees that if they or anyone or any entity on Claimant's' behalf hereafter commence, join in, or in any manner seek relief through any suit, except to seek enforcement of the settlement agreement, arising from, growing out of, based upon, or relating to any of the claims released herein, or in any manner assert against the Released Persons, or any of them, any of the claims released hereunder, then Claimant shall pay to the Released Persons, and each of them, proven damages caused to the Released Person thereby.

6.   **Dismissal.**  If Claimant has filed an action against any of the Released Persons in connection with Claimant's alleged use of a DCOC, and such action is pending in any court or tribunal at the time of the execution of this Release, then concurrently with such execution, Claimant agrees to direct and authorize her counsel to execute and deliver to Bayer's counsel a Dismissal With Prejudice or in Pennsylvania a Praceipe to Settle, Discontinue and End with Prejudice, regarding the pending action, and Claimant hereby authorizes Bayer's counsel to file said Dismissal with the court or tribunal and enter it as a matter of record, which filing shall fully and finally dispose of all claims asserted against any of the Released Persons in said action.  Bayer's Counsel shall not file said Dismissal until after Bayer has provided written or e-mail notification to Plaintiffs' Counsel that the settlement funds, or a portion of the settlement funds may be distributed to the Claimant from the QSF as set forth in the SA.

7.   **Opportunity to Consult with Counsel.**  Claimant acknowledges and represents that  Claimant has had the opportunity to confer with Claimant's Counsel regarding, and to ask questions about, (i) the settlement generally, (ii) the sum to be allocated to them in consideration for this Release, (iii) the relationship of that sum to the merits of their individual claims, (iv) the terms of this Release, and that Claimant's Counsel has answered Claimant's questions and explained the settlement and this Release to her satisfaction.

K.    **Expenses and Attorney's Fees.**  Claimant understands and acknowledges that the parties will each pay their own expenses and attorneys' fees relating to Claimant's claim and the settlement thereof.

L.    **No Admission of Liability.** Claimant understands and acknowledges that nothing contained in this Release, any documents being executed and delivered pursuant to this Release, nor any actions taken in furtherance of this Release, shall constitute or be deemed or construed as an admission of liability or wrongdoing or of any position whatsoever in connection with any matters relating to Claimant's alleged use of a DCOC or otherwise.  Claimant acknowledges that Released Persons expressly deny any liability relating to DCOCs for claims as asserted by Claimant or as may be asserted by Claimant.

M.    **Construction of Release**.  This Release shall be construed as a whole in accordance with its fair meaning and in accordance with the laws of the State of Illinois.  The terms of this Release have been negotiated by attorneys for the Released Persons and Claimant and the language of the Release shall not be construed in favor of or against anyone.  The headings used herein are for reference only and shall not affect the construction of this Release.

N.    **Entire Agreement.**  This Release constitutes the entire agreement between Claimant and the Released Persons with respect to the subject matter of this Release, and there are no other written or oral agreements, understandings or arrangements.  The terms of this Release may not be modified or waived except in writing signed by the parties hereto.

O.    **Governing Law.**  Claimant agrees that the provisions of this Release will be interpreted in accordance with, and governed by, the laws of the State of Illinois.  In the event of a dispute involving this Release, the parties irrevocably agree that venue for any such dispute shall lie in any court of competent jurisdiction in the State of Illinois.

P.    **Severability.**  In the event that any provision in or obligation under this Release shall be invalid, illegal, or unenforceable in any jurisdiction as to either Claimant or the Released Persons, or both, the validity, legality, and enforceability of other provisions in or obligations under this Release shall not in any way be affected or impaired thereby.

Q.    **Agreement May Be Executed in Counterparts.**  This Release may be executed in counterparts, which together shall constitute a fully executed original.

R.    **Acknowledgments.**  Claimant declares and acknowledges that Claimant has read and understand the terms of this Release and of the SA, that she has been represented by her attorneys with regard to the execution of this Release and the SA, and that she executes this Release voluntarily after consultation with her attorneys and without being induced, pressured or unduly influenced by any unwritten statement or representation made by any person acting on behalf of Bayer, the Released Persons, or anyone else.  Claimant further declares and acknowledges that she fully understands the nature, sufficiency and value of

the consideration set forth in Section J, above, and agrees to accept said consideration for the releases and other benefits granted to the Released Persons herein.


Subscribed and sworn before me this _____ day
of _____, 2013.

_____
Notary Public
My Commission Expires:

_____

_____
_____("Claimant" herein)
Social Security Number: _____
Date:  _____

_____
_____, Esq., individually
and as authorized agent of _____
Date:  _____

14

## SIGNATURE PAGE AND AGREEMENT BY DERIVATIVE CLAIMANT

      I am a person having or asserting the right to sue Defendants by reason of my relationship with Claimant (or, if Claimant is a legal representative of a DCOC user, such DCOC user).  I hereby enter into the Release to which this signature page is attached and agree to be bound by all of the terms of the Settlement Agreement and Release (and, without limitation, hereby give and make all releases, waivers, acknowledgements, agreements, representations and warranties therein) on the same basis as Claimant set forth therein (including, but not limited to, all joint and several indemnification obligations set forth therein).  This agreement is effective as of the date set forth beneath my name below.

<br>

| | |
|---|---|
| | _____ |
| Subscribed and sworn before me this \_\_\_\_ day | _____("Derivative Claimant" |
| of \_\_\_\_, 2013. | herein) |
| | Social Security Number: _____ |
| _____ | Date:  _____ |
| Notary Public | |
| My Commission Expires: | _____ |
| _____ | _____, Esq., individually |
| | and as authorized agent of [Derivative |
| | Claimant] |
| | Date:  _____ |

15

Appendix F-1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: YASMIN AND YAZ (DROSPIRENONE) MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | ) ) ) )  3:09-md-02100-DRH-PMF  MDL No. 2100 |
| **This Document Relates to:** | ) ) ) ) |
| Plaintiff(s), **v.** | ) )  Civil Action No. _____ ) ) |
| Defendant(s). | ) ) ) |

## STIPULATION OF DISMISSAL WITH PREJUDICE AS TO ALL DEFENDANTS

Pursuant to Fed R. Civ. P. 41(a)(1)(ii), the undersigned counsel hereby stipulate that all claims of plaintiff, _____, [individually and as representative of _____ ,] against all defendants in the above captioned matter be dismissed in their entirety with prejudice, each party to bear its own costs.

_____     _____
[Attorney for Plaintiff]                 Attorney for Bayer Defendants
[Firm Name, Address and Telephone]


Dated: _____         Dated: _____

Appendix F-2

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:      FAX NO. *(Optional):* <br> E-MAIL ADDRESS *(Optional):* <br> ATTORNEY FOR *(Name):* | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 600 S. Commonwealth Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90008
BRANCH NAME: Central Civil West

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| REQUEST FOR DISMISSAL | CASE NUMBER: JCCP 4608 |
|---|---|

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) [✓] With prejudice   (2) [ ] Without prejudice
   b. (1) [ ] Complaint   (2) [ ] Petition
      (3) [ ] Cross-complaint filed by *(name):*            on *(date):*
      (4) [ ] Cross-complaint filed by *(name):*            on *(date):*
      (5) [ ] Entire action of all parties and all causes of action
      (6) [ ] Other *(specify):** All causes of action by plaintiff _____ only

2. *(Complete in all cases except family law cases.)*
   The court [ ] did [ ] did not waive court fees and costs for a party in this case. *(This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).*
   Date:

   .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  . ▶
   (TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)      (SIGNATURE)

   *If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

   Attorney or party without attorney for:
   [ ] Plaintiff/Petitioner     [ ] Defendant/Respondent
   [ ] Cross–Complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given.**
   Date:

                         ▶
   (TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)      (SIGNATURE)

   ** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

   Attorney or party without attorney for:
   [ ] Plaintiff/Petitioner     [ ] Defendant/Respondent
   [ ] Cross–Complainant

*(To be completed by clerk)*

4. [ ] Dismissal entered as requested on *(date):*

5. [ ] Dismissal entered on *(date):*       as to only *(name):*

6. [ ] Dismissal **not entered** as requested for the following reasons *(specify):*


7. a. [ ] Attorney or party without attorney notified on *(date):*
   b. [ ] Attorney or party without attorney not notified. Filing party failed to provide
        [ ] a copy to be conformed   [ ] means to return conformed copy

   Date:            Clerk, by _____, Deputy

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. Jan. 1, 2013]

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.;
Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390
*www.courts.ca.gov*

**CIV-110**

| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | CASE NUMBER:<br>JCCP 4608 |
|---|---|

---

### COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS

If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

---

## Declaration Concerning Waived Court Fees

1. The court waived court fees and costs in this action for *(name):*

2. The person named in item 1 is *(check one below):*
   a. ☐ not recovering anything of value by this action.
   b. ☐ recovering less than $10,000 in value by this action.
   c. ☐ recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. ☐ All court fees and court costs that were waived in this action have been paid to the court *(check one):* ☐ Yes ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

▶

_____        _____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)                    (SIGNATURE)

---

Appendix F-3

|  |  |
|---|---|
| XXXXXX, | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION: BERGEN COUNTY |
| Plaintiff, | DOCKET NUMBER:  _____ |
| | CIVIL ACTION |
| v. | |
| | |
| XXXXXX, | IN RE YAZ®, YASMIN®, OCELLA® |
| | LITIGATION, CASE NO. ____ |
| | |
| | **STIPULATION OF DISMISSAL** |
| Defendants. | **WITH PREJUDICE** |

It is hereby stipulated and agreed that Plaintiff _____ dismisses all claims in this matter with prejudice as against all Defendants.  All parties shall bear their own costs.

.

_____
[Attorney for Plaintiff]
[Firm Name, Address and Telephone]

_____
Attorney for Bayer Defendants

Dated: _____

Dated: _____

FP01/ 6901451.1

# Appendix F-4

# IN THE COURT OF COMMON PLEAS
# OF PHILADELPHIA COUNTY, PENNSYLVANIA

| | |
|---|---|
| XXXXX,<br><br>         Plaintiff(s),<br><br>v.<br><br>XXXXX,<br><br>         Defendant(s). | [Court Term and Number] |

### ORDER TO SETTLE, DISCONTINUE AND END WITH PREJUDICE

**To the Prothonotary:**

Kindly mark the above-captioned matter, settled, discontinued and ended with prejudice.

_____
Attorney for Plaintiff
[Address]

Dated: _____

Appendix G

**PLAINTIFF(S):**                    **CASE INFORMATION:**

_____    Court: _____

_____


### DECLARATION OF COUNSEL


I, _____, hereby certify as follows:

I am an attorney in good standing who is admitted to practice law in the State of

_____.  The name and address of my law firm are:

_____
Law Firm

_____
Street

_____
City                        State                        Zip Code

I submit this Declaration along with the Complaint in the matter captioned

_____, filed on _____, in _____ [Court].

I hereby certify that all Plaintiffs named in such Complaint had executed a

retainer agreement for legal representation relating to this matter with the undersigned and/or my

law firm and/or my co-counsel prior to March 15, 2013.

I certify under penalty of perjury under the laws of _____

[the United States or, if filed in a State Court, the State in which the case has been filed] that the

foregoing is true and correct.


_____
Plaintiff's Counsel